# CHICAGO, INDIANAPOLIS & LOUISVILLE RAILWAY COMPANY v. RAMSEY.

[No. 21,036.   Filed April 30, 1907.]

1. JURISDICTION.—*Railroads.*—*Killing Stock.*—The circuit court has original jurisdiction of an action against a railroad company for killing two steers of the value of $90, though they were struck 200 feet apart, one being instantly killed and the other mortally wounded.   p. 392.

2. RAILROADS. — *Private Farm Crossings.*—*Killing Stock.*—Railroad companies, in the absence of negligence, are not liable for the killing of animals which enter upon their tracks through gates erected by farmers at their private farm crossings. p. 392.

3. SAME.—*Fences.*—*Killing Stock.*—*Entry.*—A railroad company is not liable, in the absence of negligence, for its killing of animals which entered upon its track where the same was not fenced, where they afterwards crossed other lands; and again entered upon the track through a gate at a private farm crossing. *Jeffersonville, etc., R. Co.* v. *Lyons,* 72 Ind. 107, and *Louisville, etc., R. Co.* v. *Etzler,* 3 Ind. App. 562, distinguished. p. 395.

4. RAILROADS.—*Negligence.*—*Killing Stock.*—The negligence for which a railroad company is liable, under §5322 Burns 1901, Acts 1885, p. 148, §3, for killing stock, is that of the common law. p. 396.

5. SAME.—*Killing Stock.*—*Negligence.*—*Special Findings.*—Special findings showing only that the animals killed could have been seen by the railroad company's engineer for 800 feet and that he did see them when 400 feet away and blew the whistle but failed to stop the train, do not show negligence. p. 396.

6. TRIAL.—*Special Findings.*—*Omissions.*—The omission of an alleged fact from the special findings is a finding against the party having the burden of proof, that such fact does not exist. p. 397.

7. RAILROADS.—*Killing Stock.*—*Negligence.*—*Question for Jury.* —Whether a railroad company is guilty of negligence in failing to stop ·a train, where the engineer sees cattle upon the track 400 feet ahead, is a question of fact for the jury. p. 397.

From Monroe Circuit Court; *James B. Wilson,* Judge.

Action by John Ramsey against the Chicago, Indianapolis & Louisville Railway Company. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court under subd. 3, §1337j Burns 1901, Acts 1901, p. 565, §10. *Reversed.*

*E. C. Field, H. R. Kurrie* and *J. E. Henley,* for appellant.

*John R. East* and *Rufus H. East,* for appellee.

HADLEY, J.—Action by appellee for the killing of two steers. The complaint is in two paragraphs, the first stating the cause of action under the statute, alleging that the steers went upon the railroad track at a point where the same might have been, but was not, securely fenced. The second is predicated upon the alleged negligence of appellant's servants in the management and operation of its train. A demurrer to each paragraph of the complaint was overruled, the case was put at issue by general denial, there was a special finding of facts, conclusions of law stated, and judgment rendered thereon in favor of appellee for $90.

Appellant's first proposition is that the trial court did not have jurisdiction over the subject-matter of the action; that as each animal was of the value of $45, and as

1. they were killed at different times, there were two separate causes of action, each of which was within the exclusive jurisdiction of a justice of the peace; citing §5513 Burns 1901, §4026 R. S. 1881; *Louisville, etc., R. Co. v. Quade* (1885), 101 Ind. 364; and other cases. The proposition would be sound if its premise were sound. But the finding is that the steers were killed, one instantly, the other mortally wounded, by being struck by a locomotive, running twenty-five or thirty miles an hour, at points about two hundred feet apart. These findings show that while both animals were not struck at precisely the same moment, the time intervening could not have amounted to more than a few seconds, and, for the purpose of this action, will be regarded as the same time.

The facts specially found, applicable to the first paragraph of the complaint, may be summarized as follows: Appellant was the owner of thirteen steers, kept in an enclosed pasture, surrounded by a fence, in good repair and sufficient to turn stock. On May 1, 1904, they escaped from said pasture without plaintiff's fault or knowledge, and he did not know that they had escaped until he was informed on the morning of May 2 that two of them had been killed by defendant company. After the steers left plaintiff's pasture they entered upon defendant's right of way at a point near said pasture where the defendant had failed to construct and maintain a fence, and where it could and should have been fenced. From the place of entry the cattle passed along the line of the railroad to Clear creek, where they passed under a bridge constructed by defendant over said creek, from the east to the west side of the railroad, and continued their course west over the lands of others, until they arrived at and entered upon the lands of one Ketcham, whose land lay on both sides of the railroad.

Gates in the right of way fence had been theretofore erected and a private farm crossing constructed across the right of way and track of the railroad for the use and convenience of Ketcham, and upon his request. When the cattle went upon the land of Ketcham the west gate of said farm crossing was open, and they passed through said open gate onto the defendant's railroad, and then and there the two animals were killed, by being struck while on the track, at places about two hundred feet apart, by a locomotive drawing a train and running up grade at the rate of twenty-five or thirty miles an hour. The animals killed were worth $90.

In 1863 (§5312 *et seq.* Burns 1901, §4025 *et seq.* R. S. 1881) the legislature passed an act imposing upon railroad companies liability for stock killed at all places where their roads were not securely fenced, making no exceptions or provisions for private farm crossings. A line of decisions followed the passage of this act, construing its provisions to the effect that if a railroad company constructed, or permitted the landowner to construct, a private crossing for his accommodation, such landowner thereby waived the benefit of the statute as to all animals of his own that passed to the railroad through such private gate, but as to all other persons the obligation of the company securely to fence its right of way existed at private crossings the same as elsewhere, and the company was liable for injury to animals of others entering upon the railroad at such crossings. *Wabash R. Co.* v. *Williamson* (1885), 104 Ind. 154, and cases cited. This remained the law until 1885, when an act was passed providing that persons owning land on both sides of the railroad should have the right to construct and maintain private wagon ways across the railroad. And when such railroad is fenced such landowner shall erect and maintain substantial gates in the lines of such fence, and keep the same securely locked. It is further provided: "If animals are killed or

injured on the track of such railroad by the cars or locomotives thereof, the company owning or operating such railroad shall not be liable to pay damages therefor if such animal entered upon the track of such railroad through such gates, unless it shall be proved that such killing or injury was caused by the negligence of the servants of the company owning or operating such railroad." §§5321, 5322 Burns 1901, Acts 1885, p. 148, §§2, 3.

The act of 1885, and all previous legislation, and the decisions of the court construing the same, were reviewed in the case of *Hunt* v. *Lake Shore, etc., R. Co.* (1887), 112 Ind. 69, and the conclusion there reached that, by the latter act, the manifest intention was to give the farmer, who prior thereto had no such power, the right to force a wagon way across a railroad that traversed his land, and to relieve railroad companies from all liability for injuring or killing animals that got upon the track by passing through one of such gates. In other words, under the act of 1885 a railroad company is not liable, in the absence of negligence, for the injury or killing of animals that enter upon its tracks by a gate of a private farm crossing. We are still satisfied with the ruling, and this decision must dispose of the present case if it is found that the cattle in question went upon the railroad track through such gate.

It will be recalled that the cattle broke out of their pasture, and reached the railroad at a place where it might have been, but was not, fenced. The plaintiff himself testified that the unfenced road the cattle entered upon was a stone-quarry switch and not a part of the main road. The special finding further states that the cattle went along the road till they came to Clear creek, then down into the creek, passing under the bridge from the east to the west side of the right of way of the main track, and thence, continuing west some distance, over the lands of others, reached and entered upon the lands of Ketcham, and thence passed to the railroad track

through an open gate to a private crossing constructed for the convenience and accommodation of Ketcham and upon his request.

Relying on a long line of cases which hold that the test of liability for animals killed is the point of entry upon the railroad, and not the place where killed, appel-

3. lee earnestly contends that the special findings show that the animals sued for entered upon the railroad at a place where the company was bound to fence, and not through the gate of a private crossing. We cannot accept this view as a correct rendering of the facts. The first entry upon the railway ended when the cattle passed under the bridge and off the railroad right of way to the west. They traveled over the lands of others, and reached and entered upon the farm of Ketcham, and while on the latter's farm went through an open gate of his private farm crossing onto the railroad, and were then and there killed. How long they wandered, or how far from the bridge was the point of second entry, is not stated. It is, however, very clear that they were uninjured when they left the railroad of their own accord at the bridge, and that they would not have been injured at all by defendant's cars if they had not reëntered upon the railroad. Having abandoned the railroad at the bridge, we are unable to see any causal or proper connection between the first and second entry. For aught that appears, the second entry might have been miles distant from the first, and might have occurred hours after the first, and we feel compelled to regard them as separate and distinct entries. The cases of *Jeffersonville, etc., R. Co.* v. *Lyon* (1880), 72 Ind. 107, and *Louisville, etc., R. Co.* v. *Etzler* (1892), 3 Ind. App. 562, relied upon by appellee as supporting his claim that the two constitute but a single entry, cannot be accepted as authorities on that point. In each of these cases the animals injured passed onto the railroad at a place where the company was bound to fence, and while there were fright-

ened and driven by a train along the track to a part of the railroad that was properly enclosed, and there killed. It seems clear that the entry that resulted in the killing of the animals was through the gate of a private farm crossing, and that the case must be governed by the rule declared in *Hunt* v. *Lake Shore, etc., R. Co., supra,* and *Pennsylvania Co.* v. *Spaulding* (1887), 112 Ind. 47.

With respect to the second paragraph of complaint that counts on negligence of appellant's servants in managing the train, the facts disclosed by the special findings are, in substance, as follows: The defendant's track is practically straight for a distance of 800 feet south of the point where the first steer was struck, from which point the engineer in charge of the train might have seen the cattle on the right of way if he had looked. Said engineer did see the cattle when 400 feet south of where the first one was struck, and blew the engine whistle, and gave the usual signal for animals on the track, but failed to stop or check the train, until both animals were struck. The steers escaped from their pasture and were killed as aforesaid without any fault on the part of the plaintiff.

In §5322, *supra,* exempting railroad companies from liability, where stock enters at a private crossing, there is this exception, "unless it shall be proven that such

4. killing or injury was caused by the negligence of the servants of the company." There being no definition of what shall constitute the negligence referred to by the statute, it must be determined by the rules of the common law.

The charge in the complaint is that the employes knew that the cattle were on the track, and would be injured by the onward movement of the train, and, with this

5. knowledge, they went ahead, instead of bringing the train to a stop, as they might have done. The finding is that the engineer might have seen the cattle on the right of way for a distance of 800 feet if he had looked,

Chicago, etc., R. Co. *v.* Ramsey—168 Ind. 390.

and did see them for a distance of 400 feet, and blew the whistle, but failed to stop his train until after the animals were killed.

It is not shown that the cattle were on the track when the engineer could have seen them. For aught that is found they might have been at the bottom of a high embankment, and might not reasonably have been expected to run-upon the track in front of the train. Besides, there is no finding that the engineer did not try to stop the train, or that he could have stopped it if he had tried.

It rested upon the plaintiff to prove the negligence. It is a familiar rule of practice that, if a finding is silent upon a material fact, as to that fact it will be presumed against the party having the burden of proof. *Dennis* v. *Louisville, etc., R. Co.* (1888), 116 Ind. 42, 1 L. R. A. 448.

The railroad company owed the plaintiff no duty to be on the lookout for his cattle. They were wrongfully and unexpectedly on the right of way, while the company was running its train at a speed and place where it had a right to run it unobstructed by the presence of the cattle. If the employe in charge of the locomotive actually saw the steers on the track, and could have stopped the train with reasonable effort and safety, and avoided the injury, whether his failure to do so, under the circumstances, constituted negligence, was a question of fact. But it is plain that we cannot say, as a matter of law, that his failure to see, or heed if he did see, the cattle on the right of way, 800 feet distant, was negligence. Neither can we say, as a matter of law, that he could have stopped the train, moving, as it was, twenty-five or thirty miles an hour, within a space of 400 feet, and avoided the injury. *Dennis* v. *Louisville, etc., R. Co., supra.*

Upon the facts found it does not appear that there was any duty resting upon the engineer to bring his train to a stop, and, by conceding to him the presumption of due care,

it must be held that the second paragraph of the complaint was not made out.

For error of the court in stating its conclusions of law on the special findings in favor of the plaintiff, the judgment is reversed, with instructions to the Monroe Circuit Court to state the conclusions of law in favor of the defendant, and render judgment accordingly.

Judgment reversed.