Indianapolis, etc., Traction Co. *v.* Smith—42 Ind. App. 605.

# Indianapolis & Cincinnati Traction Company *v.* Smith.

[No. 6,551. Filed December 15, 1908.]

1. Pleading.—*Complaint.—Interurban Railroads.—Killing Stock.— Fences.*—A complaint alleging that defendant interurban railroad company failed to maintain a suitable and sufficient fence along its right of way, by reason whereof, without plaintiff's fault, plaintiff's horse went upon the track and was there killed by defendant's car, states a cause of action. p. 606.

2. Railroads. — *Interurban.* — *Killing Stock.* — *Farm Crossings.* — Under §§5437-5443 Burns 1908, §§4026-4032 R. S. 1881, as well as by §5446 Burns 1908, Acts 1885, p. 148, §3, a landowner who constructs a private farm crossing over a railroad track, and whose stock escapes through such crossing and goes upon the track, receiving injuries thereon, cannot recover, where defendant is not negligent. p. 609.

3. Interurban Railroads.—*Killing Stock.—Farm Crossings.—Contracts.*—Under §5712 Burns 1908, Acts 1903, p. 426, §6, interurban railroad companies, in the absence of negligence, or of a contract to keep the gates to such crossings in repair, are not liable for stock injured or killed upon their rights of way, where such stock wandered thereon through the owners' private farm crossings. p. 610.

4. Railroads. — *Killing Stock.* — *Farm Crossings.* — *Contracts.* — Where a landowner's stock escapes through his gate at his private crossing and goes upon a railroad company's track and is killed thereon, the company, in the absence of negligence, or of a contract to keep such gate in a safe condition, is not liable. (§5451 Burns 1908, Acts 1885, p. 224, §5.) p. 611.

From Superior Court of Marion County (72,280); *Vinson Carter,* Judge.

Action by George M. Smith against the Indianapolis & Cincinnati Traction Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Smith, Cambern & Smith,* for appellant.

*Edgar A. Brown, Francis M. Springer* and *James E. Kepperly,* for appellee.

Comstock, P. J.—Appellee recovered judgment against appellant for $125 for the killing of a horse.

The errors assigned and relied 'upon by appellants for a reversal are, the overruling of the demurrer for want of facts to the fourth paragraph of complaint, and appellant's motion for a new trial.

Said paragraph, omitting formal and preliminary averments, is substantially as follows: On September 14, 1904, and before the construction by the defendant of its said roadway, the defendant and the plaintiff entered into a certain contract in writing, a copy of which is filed herewith and made a part hereof, marked exhibit A, wherein they agreed that as part of the consideration for the conveyance by said plaintiff to the defendant of sufficient land, so that the defendant could construct a roadway for its said railroad over and through said farm, the defendant would provide and maintain a crossing, with suitable cattle-guards over its tracks, which crossing and cattle-guards were to be located at the option of plaintiff. Said defendant also agreed to construct and maintain a good and substantial fence on both sides of the land, so to be conveyed, such as is contemplated by the statute of Indiana, approved March 10, 1903, so that the land of the plaintiff might be enclosed on both sides of said road, and so that convenient access might be had from one portion of said land to that portion separated from it by said roadbed. Plaintiff further avers that he executed his deed for said land to the defendant, as provided in said contract, and the defendant then and there constructed its said roadway over and across said land and through plaintiff's said farm on the land so conveyed to it, and constructed said crossing provided for in said contract at a point indicated by plaintiff, but it wholly failed to provide and maintain a fence on both sides of said roadbed, and barriers and cattle-guards sufficient and suitable to prevent horses and other stock from getting onto defendant's road from said crossing; that plaintiff provided a lane from his barnyard on the northern part of his said farm, running down to and across said defendant's roadbed at the

point where said crossing had been established as aforesaid, so that his cattle could pass from his barnyard to the field enclosed by the south fence along defendant's right of way; that gates were constructed and maintained by plaintiff opening into the field south of said roadway and into the lane north of said roadbed, as hereinbefore described; that on July 27, 1906, without any fault or negligence on plaintiff's part contributing thereto, eight head of horses got out of said south field onto said crossing, and because there were no suitable and sufficient fences, barriers and cattle-guards, as contemplated and provided for in said contract, said horses got upon the roadway and right of way of the defendant, west of said crossing, and a car owned by defendant and operated by electricity and running over its tracks, in said Marion county, and State of Indiana, on July 27, 1906, struck one of said horses, which was about two years old, and then and there the property of the plaintiff, and so maimed and wounded it that it died from the effects of being so struck by said car operated by said servants and agents of the defendant, all without fault or negligence of the plaintiff contributing thereto; that said horse was of the value of $125, and plaintiff is damaged in the sum of $125. The agreement, made a part of the complaint, contains, among others, the following provisions:

"That whereas the party of the first part has agreed to convey to the party of the second part certain land [describing it], said land to be used by said second party for its roadway through the land of the party of the first part; * * * now, therefore, it is agreed that in consideration for the transfer of said land, to be described in said deed of conveyance, the said party of the second part agrees, in addition to the payment to the party of the first part of the sum of $2,100, to be expressed in said deed of conveyance, that it will * * * provide and maintain a crossing with suitable cattle-guards over its tracks, said party of the first part to have the option of locating said crossing and cattle-guards; that said party of the second part also agrees to construct and maintain a good and substantial fence

on both sides of the land to be conveyed as aforesaid, such as is contemplated by statute of the State of Indiana, approved March 10, 1903, so that the land of the party of the first part may be enclosed on both sides of said road when completed, and so that convenient access may be had from one portion of said land to that portion separated from it by said roadbed.''

The objection to said paragraph is that ''it appears affirmatively therefrom that appellee's horse got on appellant's road through a gate at a private crossing on the appellee's farm, and wandered along the right of way to a public highway where it was struck and killed. The reason given does not appear to be sustained by the complaint, and so far as the objections are stated the demurrer was properly overruled.

That the finding and decree of the court is not sustained by the evidence and is contrary to law are the reasons set out in the motion for a new trial.

From the proofs and admissions it is shown that appellant's railroad, operated by electricity, runs east and west through appellee's farm; that appellee had a private crossing over said railroad; that from said private crossing to the Arlington road, a distance of three-eighths of a mile, the railroad was securely fenced by a wire fence, put up by a son of the appellee; that two gates were erected by appellee at the south end of said crossing in the line of appellant's fence, opening into appellee's pasture fields, south of the railroad; that appellee's cows and horses were in this pasture, and in the evening of July 26, 1906, the appellee's son, in company with a boy whose name is not given, went to the pasture and drove the cows through the east gate across the railroad to the barn; that after passing through said gate he fastened it by running two boards between the cracks of the gate and the post; that there never was a lock or chain on the gate; that within one-half hour after the appellee's son passed through this gate appellee's horses got out onto the private crossing through this gate and were driven off

NOVEMBER TERM, 1908. 609

Indianapolis, etc., Traction Co. *v.* Smith—42 Ind. App. 605.

the track by the crew of the passenger-car that passed at
.6 :30 o'clock; that this gate was not left open by appellant
or any of its servants; that the horses wandered along the
right of way towards the west, and three of them passed
over the cattle-guard at the Arlington road out onto the
public highway; that appellant's freight-car, running at
the rate of twenty miles an hour, struck one of these horses
while it was on the highway, between the end of the plank
crossing and the cattle-guard; that, in procuring the right
of way through appellee's farm, the appellant executed the
contract marked exhibit A, by which it was agreed, among
other things, to ''provide and maintain a good and substan-
tial fence on both sides of the land to be conveyed;'' that
at the time appellee's horse was killed the cattle-guards at
the private crossing and the cattle-guards at the Arlington
road were not in a condition to prevent horses or other stock
from passing over the same.

In 1863 the legislature passed an act imposing upon rail-
road companies liability for stock killed at all places where
the roads were not securely fenced, making no pro-
vision for private crossings (§5437 *et seq.* Burns 1908,
§4026 *et seq.* R. S. 1881). Under this act it has
been held that if a railroad company constructed, or per-
mitted the landowner to construct, a gate for a private cross-
ing for his accommodation, such landowner thereby waived
the benefit of the statute as to all animals of his own that
passed onto the railroad through such private gate, but as
to all other persons the obligations of the company securely
to fence its right of way existed at private crossings the
same as elsewhere, and the company was liable for injury to
animals of others entering upon the railroad at such cross-
ings. This remained the law until 1885, at which date an act
was passed providing that persons owning land on both sides
of the railroad should have the right to construct and main-
tain private wagon ways across the railroad; and when such

610    APPELLATE COURT OF INDIANA,

Indianapolis, etc., Traction Co. *v.* Smith—42 Ind. App. 605.

railroad is fenced such landowner should erect and maintain substantial gates in the lines of such fence and keep the same securely locked. Acts 1885, p. 148, §2, §5445 Burns 1908. Section three of said act (§5446 Burns 1908) is as follows: "If animals are killed or injured on the track of such railroad by the cars or locomotives thereof, the company owning or operating such railroad shall not be liable to pay damages therefor if such animal entered upon the track of such railroad through such gates, unless it shall be proved that such killing or injury was caused by the negligence of the servants of the company owning or operating such railroad."

Under the act of 1885, *supra*, it has been held that a railroad company is not liable, in the absence of negligence, for the injury or killing of animals that enter upon its track by passing through one of said gates. *Chicago, etc., R. Co.* v. *Ramsey* (1907), 168 Ind. 390, 120 Am. St. 379.

In 1903 the legislature passed an act requiring interurban railroads, traction lines or suburban railroads using electricity for motive power, to fence their rights of way used for railroad tracks, to construct barriers and cattle-guards at said public roads and highway crossings, maintain and keep the same in repair, and provide for the construction of farm crossings and for cattle-guards at such crossings. Acts 1903, p. 426, §§5707-5712 Burns 1908.

Sections one, two, three and five of said act, among other things, provide generally for the fencing of railroads described in the title of said act and the maintenance of such fences by the railroad companies, and, in certain cases, for such fencing and maintenance by adjoining landowners at the expense of such railroad companies. Section four saves the right of action under existing laws. Section six of said act provides as follows: "When such railroad is fenced on one or both sides at the point where such way is constructed such abutting landowner shall erect and maintain substantial gates in the line of such fence or fences across such way, and keep the same securely fastened and closed

NOVEMBER TERM, 1908.    611

Indianapolis, etc., Traction Co. *v.* Smith—42 Ind. App. 605.

when not in use by himself or his employes." Section 5444
Burns 1908, Acts 1899, p. 485, provides for the construction
of driveways at crossings where the landowners own on both
sides of the right of way.

Section 5451 Burns 1908, Acts 1885, p. 224, §5, provides:
"All gates and bars at farm crossings, shall, in the absence
of a contract or agreement to the contrary, be con-
structed and maintained and kept closed by the owner
of such farm crossing." If animals go upon the rail-
road tracks through a gate that has been left open the rail-
road company is not liable for injuries to such animals, unless
such company is guilty of negligence. *Pennsylvania Co.* v.
*Spaulding* (1887), 112 Ind. 47; *Hunt* v. *Lake Shore, etc., R.
Co.* (1887), 112 Ind. 69.

The construction of §5451, *supra,* should control the con-
struction of §5712, *supra,* unless it appears that the contract
in question releases appellee from keeping the gates securely
fastened. This, the contract does not do. The gate through
which the stock passed was not left open by appellant and it
was not its duty to keep it closed.

The case at bar is within the doctrine of *Chicago, etc., R.
Co.* v. *Barnes* (1888), 116 Ind. 126. In that case the com-
pany had received a deed from plaintiff for its right of way,
and in the deed the company agreed to build and maintain a
fence on both sides of the right of way and farm crossings
with cattle-guards. The company built the fences with sub-
stantial gates at the crossings, but failed and neglected to
build the cattle-guards. Afterwards the gates got out of
repair and no effort was made by the company or plaintiff
to repair them. Plaintiff's animals were fed in a pasture on
the north side of the railroad, and passed from the field onto
the railroad from an open gate at such private crossing.
The court said: "The facts stated make a *prima facie* case
for the appellee, for they show a valid contract to make a
secure fence, a breach of this contract, and that the animals
got upon the track because the fence was not such as it was

appellant's duty to erect and maintain. If it had appeared that the gates were left open by appellee, or by some wrong-doer other than the appellant, we should, perhaps, be required to hold that there was no liability; but no such facts appear."

The facts bring the case within the ruling of the case of *Chicago, etc., R. Co.* v. *Ramsey, supra.* Judgment reversed, with instructions to sustain appellant's motion for a new trial.