## VANDALIA RAILROAD COMPANY *v.* CLEM.

[No. 7,632.   Filed December 14, 1911.]

1.  RAILROADS.—*Killing Animals.*—*Wilful Injuries.*—*Complaint.*—A complaint alleging that defendant railroad company "recklessly, wantonly and wilfully * * * ran said train on, against and over said team, wagon and harness" belonging to plaintiff, thereby destroying them to plaintiff's damage, attempts to charge a wilful injury.   p. 96.

2.  RAILROADS.—*Wilful Injuries.*—*Complaint.*—A complaint against a railroad company for wilful injuries must allege in words or substance that the injurious act was purposely and intentionally committed, with the intent wilfully and purposely to inflict the injury complained of.   p. 97.

3.  RAILROADS.—*Wilful Injuries.*—*Complaint.*—A complaint against a railroad company for killing a team of horses, and destroying their harness and a wagon, alleging that defendant "recklessly and wilfully ran said train against and over said team" and that defendant's employes ran such train without "seeing or endeavoring to see said wagon and team," does not allege a wilful injury, the latter allegation showing negligence only.   p. 97.

4. NEGLIGENCE.—*Contributory.—Complaint.*—A complaint in an action for negligence, affirmatively alleging facts constituting contributory negligence, is insufficient. p. 98.

5. RAILROADS. —*Killing Animals. —Wilful Injuries. —Evidence.* — Evidence that, without plaintiff's fault, his horses became unhitched, that they strayed into defendant railroad company's freightyard, that in turning the wagon became locked and the horses remained there until killed, that defendant's unscheduled freight-train, with engine reversed, giving the crossing and station signals but carrying no head-light, and unlawfully running thirty miles an hour struck such horses and wagon, that a lantern hanging on the rear of the tender lighted the track for thirty feet in advance of the train, that the engineer after seeing the horses reversed his engine but could not stop it in time to prevent killing the horses, that the damage was $375, and that the yard was used by the public but no team had been seen before on the track as a train approached, shows that the horses were trespassers and does not establish a complaint for wilful injuries. p. 98.

From Owen Circuit Court; *Joseph W. Williams,* Judge.

Action by Charles G. Clem against the Vandalia Railroad Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Samuel O. Pickens* and *Owen Pickens,* for appellant.
*Willis Hickam,* for appellee.

ADAMS, J.—Action by appellee for damages occasioned by the killing of his team of horses and the destruction of his wagon and harness by one of appellant's freight-trains, in its yards at the town of Gosport, Indiana.

The complaint sets out the surroundings, situation and condition of the railroad yards, the circumstances attending the entry of the team upon appellant's property, and the resulting injury, and concludes as follows: "That within a few minutes after plaintiff's said team had entered upon defendant's said railroad track at said place, and at about 5:30 o'clock in the evening, and while it was too dark to see said team and wagon, without light, at a sufficient distance ahead of said engine, as it approached them from the west, to stop said train, at the rate of speed at which it was

then running—thirty miles an hour—and to prevent its running over said team and wagon, said defendant, without a light, and without a lookout on said engine, and without said yards being in any way lighted, recklessly, wantonly and wilfully, and without seeing or endeavoring to see said wagon and team so confined upon its tracks, and without any care or regard for the lives or safety of persons or teams upon said tracks, recklessly and wilfully ran said train on, against and over said team, wagon and harness, while it was so confined upon said defendant's main track, in or adjoining its switch yards, and thereby wilfully and wantonly crushed and killed both horses, and destroyed said wagon and harness, to plaintiff's damage in the sum of $350, all of which occurred through the wilfulness and recklessness of said defendant in so operating its said train, without any fault or negligence whatever on the part of this plaintiff."

Appellant demurred to the complaint for want of sufficient facts, which demurrer was overruled, and the cause was put at issue by an answer in denial. There was a trial by jury, and a finding for appellee for $375. Appellant's motion for a new trial was overruled, and judgment was rendered on the verdict.

The errors relied on for reversal are (1) the overruling of the demurrer to the complaint, and (2) the overruling of the motion for a new trial. Under the last assignment, the only error complained of is the refusal of the court to give a peremptory instruction directing a verdict for appellant.

The action is clearly predicated on wilfulness, and not on negligence. If appellee's complaint does not state a cause of action for the wilful killing of his team and

1. the destruction of his property, then the demurrer should have been sustained.

It will be noted that there is no charge in the complaint that the injurious act was purposely and intentionally com-

mitted, with intent wilfully and purposely to inflict
2. the injury complained of. Such an averment, or
substantially such an averment, has been held necessary to constitute a good complaint for wilful injury.
*Pittsburgh, etc., R. Co.* v. *Ferrell* (1907), 39 Ind. App. 515;
*Union Traction Co.* v. *Lowe* (1903), 31 Ind. App. 336;
*Gregory* v. *Cleveland, etc., R. Co.* (1887), 112 Ind. 385;
*Kalen* v. *Terre Haute, etc., R. Co.* (1897), 18 Ind. App. 202,
63 Am. St. 343; *Walker* v. *Wehking* (1902), 29 Ind. App.
62; *Indianapolis St. R. Co.* v. *Taylor* (1902), 158 Ind. 274.

In the case of the *Union Traction Co.* v. *Lowe, supra,* this
court said: "It seems to be the settled law of this State that
a complaint which seeks redress for a wilful injury, involving, as it does, conduct which is *quasi*-criminal, must aver
that the injurious act was purposely and intentionally committed, with the intent wilfully and purposely to inflict the
injury complained of. * * * The complaint in an
action of this character, *quasi*-criminal in its nature, and
involving, as it does, an intent to inflict the injury complained of, ought to be strictly construed by the rules of
pleading herein announced."

Without questioning this rule of construction, we do not
think the words "purposely and intentionally committed
with intent wilfully and purposely to inflict the in-
3. jury complained of," constitute a necessary form for
charging wilfulness in a complaint, but that the purpose and intent to inflict the injury may be charged in
other words. In the complaint before us, it is averred that
the defendant "recklessly and wilfully ran said train
against and over said team." If the train was wilfully run
over the team, it implies that the injury was committed not
only with purpose and intent, but with knowledge as well.
Such is the meaning of "wilful." 8 Words and Phrases,
7468. This charge, standing alone, we think would make
the complaint good as an action for wilful injury, but it

does not stand alone. In the same sentence it is averred that the train was run "without seeing or endeavoring to see said wagon and team." This would be negligence. But, there are no degrees of negligence, and negligence, no matter how reprehensible, can never approximate wilfulness. The two conditions have nothing in common and everything in conflict. The specific averment that defendant did not see nor try to see the team charges negligence, and must control the general averment that the injury was wilfully committed.

We therefore conclude that the complaint does not state facts sufficient to constitute a cause of action for wilful injury, and, as contributory negligence affirmatively appears by the complaint, it does not state a cause of action for negligence.

The motion for a new trial calls in question the sufficiency of the evidence to support the verdict. If the verdict is not sustained by sufficient evidence, then there was error in refusing to give the instruction directing a verdict for defendant. We have carefully read the evidence, and resolving all conflicts in favor of the general verdict, we find that the evidence establishes the following facts: On the evening of December 31, 1906, without any fault on the part of appellee, his horses became unhitched from a post in the town of Gosport, and, drawing a wagon, wandered into appellant's freight yards, the horses entered the yard near the east end, and proceeded west about five hundred feet to a point forty-five feet east of the west end of the switch, where they entered on the main track. In an effort to turn, the wagon became locked, and the horses remained in that situation until struck and killed by appellant's train. The night was dark, and there was a misting rain. A freight-train of six cars, running without a schedule and drawn by a reversed engine, approached from the west, giving the crossing and station signals before reaching the switch. The engine had no head-light, and a brake-

man's lantern was suspended from the rear of the tender, but did not light the track for more than thirty feet in advance. A train approaching from the west can be seen from the switch yard at Gosport for a distance of over six hundred feet, and the light from the lantern on the rear of the tender could be seen for that distance. At the time of the accident the train was running at the high and unlawful speed of thirty miles an hour, and had no lookout on the tender. When the engine was within thirty feet of the horses, they were seen by appellant's agents in charge of said train, and immediately the engineer applied the air, and reversed his engine, but could not stop it until it had traveled eighty feet beyond the point where the horses were struck. The value of the horses killed and the wagon and harness destroyed was $375. On account of the narrowness of the freight yards near the west end, in loading and unloading freight, it was necessary, when turning a team, to drive on the main track, and when loading logs upon cars, it was necessary to drive the team on the main track, but it was not necessary at any time to leave a team standing on the track, and no one ever saw a team or other obstruction on the main track when a train was approaching. The yards were used by the public at night, as well as during the day, for loading and unloading freight, which fact was known to appellant and its agents. The engineer in charge had been running his engine through the yards at Gosport for twenty-five years, and never saw nor knew of any obstruction on the main track, and had no knowledge or suspicion that the horses were on the track at this particular time. The other employes of appellant in charge of the train had likewise been in the service of the company for many years, and never saw nor knew of any obstruction on the main track, and had no knowledge of the obstruction at the time of the accident.

This evidence clearly shows that appellant was guilty of negligence in operating its train at a high and unlawful

rate of speed, with the engine reversed, without sufficient light, and without a lookout on the tender. If the horses, under such circumstances, had been upon the main track by the invitation of the company, or in the performance of some work, either in loading or unloading freight, which required them to go upon the track, there could be a recovery on account of the negligence of appellant; but the horses were trespassers, and there are no facts established by the evidence that would warrant a conclusion, as a matter of law, that the killing was constructively wilful and intentional.

In the case of *Louisville, etc., R. Co.* v. *Bryan* (1886), 107 Ind. 51, Mitchell, J., speaking for the court, said: ''That the conduct imputed to the employes of the railway company was negligent, cannot be doubted, but negligence, no matter how gross, cannot avail in an action where it is necessary, on account of the plaintiff's contributory negligence, to aver and prove that the injury was inflicted by design or with an actual or constructive intent. In such a case, it is incumbent on the plaintiff to aver and prove that the injury was intentional, or that the act or omission which produced it was wilful, and of such a character that the injury which followed must reasonably have been anticipated as the natural and probable consequence of the act. Where one person negligently comes into a situation of peril, before another can be held liable for an injury to him, it must appear that the latter had knowledge of his situation in time to prevent the injury. Or it must appear that the injurious act or omission was by design, and was such— considering the time and place—that its nature and probable consequence would be to produce serious hurt to some one. To constitute a wilful injury, the act which produced it must have been intentional, or must have been done under such circumstances as evinced a reckless disregard for the safety of others, and a willingness to inflict the injury complained of. It involves conduct which is *quasi*-criminal.''

*Jordan* v. *Grand Rapids, etc., R. Co.* (1904), 162 Ind. 464; *Indianapolis St. R. Co.* v. *Taylor, supra; Cleveland, etc., R. Co.* v. *Miller* (1898), 149 Ind. 490; *Pittsburgh, etc., R. Co.* v. *Ferrell, supra; Baltimore, etc., R. Co.* v. *Reynolds* (1904), 33 Ind. App. 219; *Palmer* v. *Chicago, etc., R. Co.* (1887), 112 Ind. 250.

Under the rules declared in the cases just cited, it is clear that the evidence does not show a wilful and intentional injury, and the verdict is therefore not supported.

The judgment is reversed, with instructions to grant a new trial and to sustain the demurrer to the complaint.