VANDALIA RAILWAY COMPANY v. DULING.

[No. 8,606. Filed June 4, 1915. Rehearing denied October 29, 1915. Transfer denied December 16, 1915.]

1. RAILROADS.—*Injury to Trespassing Animals.*—*Liability.*—At common law it is the owner's duty to keep his animals confined to his own premises, and if, notwithstanding his exercise of reasonable care to prevent it they escape to the right of way of a railroad company they are trespassers thereon, and the railroad company, being without fault respecting their escape, owes the owner no duty of seeing them, and, having no knowledge of their presence, would not be liable for injury or death caused by its train striking them; but where a company has knowledge of the presence on its tracks of animals that have escaped thereon without contributory negligence of their owner, a liability predicated on negligence may arise, dependent on the facts in each case, because of injury or death resulting from the operation of its train, regardless

of whether the company had properly guarded and fenced its tracks; liability in such case being on the principle that a duty may arise from the knowledge of a situation, the violation of which constitutes negligence.   p. 339.

2.   RAILROADS.—*Injury to Trespassing Animals.*—*Reasonable Care.* —*Jury Questions.*—Where defendant's engineer had information that animals had escaped upon defendant's tracks and that he would probably encounter them, a duty arose to use reasonable care to discover them, and, after their discovery, to avoid injuring them; and the question of whether such care was exercised was one of fact for the jury, in view of the fact that defendant also owed a duty to carry and deliver safely its passengers, and to the public and itself in the preservation of property.   p. 346.

3   APPEAL.—*Review.*—*Presumptions.*—Where the instructions are not before the court on appeal, it will be presumed that the trial court performed its duty in that respect.   p. 347.

4.   APPEAL.—*Review.*—*Verdict.*—*Conclusiveness.*—Where the issue of negligence in the killing of certain animals while the same were trespassing upon defendant's railroad tracks was properly raised, and there was evidence to show knowledge by defendant's engineer of their presence upon the tracks, together with other evidence making the question of negligence properly one of fact for the jury, its verdict for plaintiff was sustained by sufficient evidence.   p. 347.

5.   NEGLIGENCE.—*Railroads.*—*Injury to Animals.*—*Last Clear Chance.*—The doctrine of last clear chance may be applied in cases involving negligent injury to or the killing of animals, and also in cases involving inanimate property.   p. 348.

6.   EVIDENCE.—*Experiments.*—*Admissibility.*—*Similarity of Conditions.*—To render testimony admissible respecting experiments made subsequently to the killing of certain animals by defendant's train, to ascertain the distance at which objects could be seen in the light of the train's headlight, it was not essential that the conditions should have been exactly reproduced in all details, but it was sufficient if the conditions were shown to have been substantially the same as when the animals were killed, and any departure in such matter goes to the weight rather than to the admissibility of the evidence.   p. 348.

7.   EVIDENCE.—*Experiments.*—*Similarity of Conditions.*—*Discretion of Court.*—The determination of whether conditions under which an experiment is made were substantially the same as those existing at the time of the occurrence under investigation, so as to render evidence of such experiments admissible, necessarily requires the exercise of some discretionary power by the trial court.   p. 348.

From   Owen   Circuit   Court;   *James   B.   Wilson,* Judge.

Action by Henry E. Duling against the Vandalia Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

. *Samuel O. Pickens, Owen Pickens, R. F. Davidson* and *John G. Williams,* for appellant.

*Willis Hickam* and *Hubert Hickam,* for appellee.

CALDWELL, J.—Appellant brought this action to recover the value of certain horses and mules alleged to have been run into and killed by one of appellant's passenger trains. It was alleged that the animals escaped from appellee's pasture to appellant's right of way and track without the knowledge of appellee, and that they so escaped and were subsequently killed without any fault or negligence on his part. The complaint declares on a common-law rather than a statutory liability, and proceeds on the theory of negligence. It is alleged in substance that appellant's employes in charge of the train that killed the animals had received prior notice from certain of appellant's employes and officials that the animals were on the right of way and track at or near the point where they were subsequently killed, and that they were warned to be on the lookout for the animals while approaching and running by such point. The negligence charged is to the effect that appellant by its said employes in charge of and operating the train with such knowledge negligently ran the train by such point at the great and unusual speed of thirty-five miles per hour, and negligently failed to keep a lookout for the animals at such point and negligently chased them along the track without slackening speed or ringing the bell or sounding the whistle for a distance of more than 700 feet where the configuration of the track and right of way was such that they could not escape and thereby ran upon and killed them.

The complaint is not questioned. A trial resulted in a verdict and judgment for appellee in the sum of $1,175. The questions presented arise under the motion for a new trial. These questions are respecting the sufficiency of the evidence, and alleged errors in admitting evidence. Appellee introduced evidence to the following effect: Appellant's railroad extends westward through Spencer to Vincennes. Rattlesnake station is three miles and Freedom nine miles west of Spencer. White's Point is three miles west of Rattlesnake station. From White's Point the railroad extends westward on an embankment in a straight line for three quarters of a mile through appellee's farm, and there near the west side of the farm enters a cut which is about 250 feet long and five to fifteen feet deep. From White's Point to the cut the railroad is on an ascending grade, increasing gradually from twenty-eight feet to sixty-six feet per mile. The view westward from the point to the cut is open, there being no intervening trees or other obstructions along the right of way. Appellee's private farm crossing is at the west end of the cut leading to which from a field south of the railroad is a gate through the railroad fence. On and prior to Sunday, February 12, 1912, appellee was pasturing horses and mules in said field. At about ten a. m. of that day appellee and wife left home to spend the day with friends a few miles distant. Shortly after leaving home, appellee learned that his horses and mules had escaped to the right of way. He thereupon telephoned to his sons at home, who drove the animals back into the field, and learning that they had escaped through the gate, fastened it by means of a rail propped from the railroad side and a wire ex-

tended around the post and the upright of the gate. By one o'clock p. m., the animals had again escaped to the right of way without the knowledge of appellee, and there was nothing to indicate that appellee was at fault in the matter. In some manner not disclosed by the record, notice was received at the office of appellant's superintendent that the animals were on the right of way, and from that office orders were issued to the crews of several trains passing the place on that afternoon to be on the lookout for them. The animals were killed by a west bound passenger train due at Spencer at about 6:40 p. m., designated as train No. 55. At Spencer appellant's telegraph operator delivered to the conductor and engineer of No. 55 an order signed by appellant's superintendent to the effect that they were to look out for stock on the track near White's Point. The operator testified he knew the conductor saw the order but he was not certain as to the engineer, so he forwarded it to Rattlesnake where it was delivered to the engineer. Train No. 55 passed through appellee's farm about 7:30 p. m. A few moments after it had passed, five of the animals were found dead or so badly injured that they died where they lay, and one was so seriously injured that it died the next day at the barn. All were in the cut, five on the north side and one on the south. The one farthest west was 160 feet from the one farthest east. Those on the north side were struck on the left hip and side, and the one on the south on its right hip and side, thus indicating that all were facing west when struck. There was other evidence indicating that the animals were thrown west by the collision. The gate was open about three feet, ground frozen, some snow and slush. The tracks indicated that the animals

had passed out through the gate, thence eastward along the right of way, and had passed onto the track 660 feet east of where the one lying farthest east was found. From where they entered on the railroad, the tracks of the animals indicated that they ran rapidly to the place where they were killed. After it had struck the animals, the train stopped 396 feet west from where the west animal was found or 556 feet west of the east one. There was some evidence that the train was running twenty-five to thirty miles per hour, and uncontradicted evidence that the bell was not ringing or the whistle sounded. It was dark at the time, somewhat cloudy, but no fog. There was evidence that headlights such as appellant used on its passenger locomotives illuminated the track on a dark night so that the engineer should be able to see stock on the track at a distance of 450 to 500 feet, and that such a train as No. 55 on such a grade, running twenty-five to thirty miles per hour could be stopped within a distance of 180 to 200 feet, without the use of the emergency brake, and within a distance of 120 feet if the emergency brake is used. There was other evidence of an experiment made at a subsequent time on a dark night at the place where these animals were killed, to the effect that a man on the track could be seen at a distance of 600 feet in the light of the headlight of train No. 55. The engineer of No. 55 was the only witness introduced by appellant. He testified to receiving an order at Rattlesnake to look out for stock just west of White's Point; that as he neared the point he shut off the steam and let the engine drift; that he opened the throttle while climbing the grade; that his speed was fifteen miles per hour while passing the point, and not to exceed six miles per hour by the time he

saw the stock; that he was looking out for the stock all the time; that his first knowledge of the presence of the animals was that he saw two lying on the north side of the track and one on the south, and at the same time saw others huddled together on the track eighty feet in front of the train; that he had no knowledge of striking the first three mentioned, and claimed that the east bound train hit them, although he admitted that he reported all of them as killed by his train. When he saw the animals bunched together on the track in front, he put on the emergency brake, but was not able to stop the train before he hit them, but that he did not know whether they were running or standing still when the train struck them; that the night was misty and the light did not show very far.

Appellant does not contend that the animals escaped from appellee's enclosure to the right of way and track by reason of any contributory negligence or want of reasonable care on appellee's part, nor is it contended that appellant was free from negligence in the occurrence in which the animals were killed. In support of the assignment that the verdict is not sustained by sufficient evidence, appellant's argument may be summarized as follows: (1) That under his complaint appellee seeks to enforce a common-law liability, growing out of negligence, and that therefore no statute under which a railroad company is chargeable for injuring stock can be considered. (2) The evidence shows that the animals were trespassers and that therefore appellant is not liable for injury inflicted on them through negligence; that to charge appellant, the killing of the animals must have been wilful.

Appellee in his brief does not take issue with the first proposition of the argument, and therefore for purposes of the present discussion, it may be treat-

ed as conceded.    While appellant's attorneys vigorously contend that the second proposition of the argument, applied to the facts of this case, is sound, yet they frankly admit that they have found no decision of either court of appellate jurisdiction of this State that directly supports it. In addition to certain personal injury cases, that lay down the general proposition that a railroad company owes no duty to a trespasser on its track, except to abstain from wilfully injuring him, appellant cites *Pittsburgh, etc., R. Co.* v. *Stuart* (1880), 71 Ind. 500; *Dennis* v. *Louisville, etc., R. Co.* (1888), 116 Ind. 42, 18 N. E. 179, 1 L. R. A 448; and *Vandalia R. Co.* v. *Clem* (1911), 49 Ind. App. 94, 96 N. E. 789.    The discussion in the Stuart case, *supra*, is grounded on the common-law rule that it is the duty of the owner of animals to keep them on his own premises, and that he is a wrong-doer if he suffers them to stray upon the lands of another.    That rule, subject to certain exceptions not applicable in that case or in the case at bar, is the law in this State.    From that rule, the court in the Stuart case deduces a conclusion that although the owner of such animals has exercised reasonable care to keep them within his own enclosure, yet if notwithstanding such reasonable care, they escape to the lands of another, they are trespassers thereon. The court then, after quoting from a number of decisions of courts of other states the doctrine claimed to be applicable to the facts of this case to the effect that a defendant may be held liable for only the wilful, rather than the negligent injury of such trespassing animals, finds and declares it to be unnecessary to endorse or approve the statements of law as expressed in such quoted decisions, but says in substance that the law as stated in such decisions seems to be the logical result or sequence of the com-

mon-law rule above mentioned. As stated in the Stuart case, the deduction of such sequence was not necessary to the decision of that case as indicated by the fact that it was reversed on the ground that the evidence failed to establish the negligence charged. The Stuart case is reviewed in *Pittsburgh*, *etc.*, *R. Co.* v. *Shaw* (1896), 15 Ind. App. 173, 43 N. E. 957. The question involved in the case at bar was not in the Stuart case—that is, Where stock escape from the owner's enclosure, without any fault or negligence on his part and wander onto the track of a railroad company, and where the company has or is chargeable with knowledge of their presence, is the company liable for negligently killing them in the operation of its trains?

In the Dennis case cited by appellant, a mare which the owner kept in a securely fenced field adjoining the track of the railroad company escaped therefrom, and entered upon the track, at a point where it was securely fenced. She ran down the track in front of an approaching train, and was caught and killed by it at a cattle guard. The decision turns on a special finding from which there was absent the element that the engineer or fireman saw the mare. The court said: "It is to be remembered that the train was rightfully moving along the track of which the appellee was the exclusive owner, that it was fenced as the law requires, and that the mare was wrongfully on it. The employes of appellee were not under a duty to an owner to see animals wandering on a track securely protected, and here we are concerned only with their duty to the owners of wandering animals. Whether the appellee would have been liable had the engineer or fireman seen the mare and taken no measures to stop the train or frighten her from the track, we need not decide, for it does not appear that they saw

the animal. We do not believe that where an animal wrongfully on the track is not seen, a railroad company is liable, although one of its engines strikes and kills it. This is so, for the reason that the company owes no such duty to the owner of domestic animals, and where there is no duty there can be no negligence." In that case the facts found disclose that the mare escaped from a field securely fenced, and that the owner on learning of the escape took prompt steps to reclaim her. In the absence of anything unusual in the disposition or propensities of the mare, the court held that the owner was not guilty of contributory negligence by reason of the escape. Notwithstanding the absence of contributory negligence, however, the mare being on the track where the company had properly constructed fences as required by law, it was held in effect that the mare was a trespasser on the railroad. The track being properly guarded, appellee's employes had no reason to suspect the presence of the mare or other wandering animal, and hence the company through such employes was charged with no duty towards the owner to be on the lookout for any such animal, or to see it, as expressed in the opinion, and as they did not see the mare or have knowledge of her presence, no duty towards the owner respecting such mare existed. The court however expressly states that it does not decide the question of whether, had the mare been seen by such employes, or had knowledge of her presence been otherwise obtained, any duty would have arisen out of the exigencies of the situation a failure to perform which would have been negligence. *Vandalia R. Co.* v. *Clem, supra,* also cited by appellant, is readily distinguishable from the case at bar. There are also other decisions in this State where the broad general statement is made, sometimes by

way of *dictum*, sometimes in the course of a decision under the special facts, that a railroad company owes no duty towards the owner of a domestic animal wrongfully on the track, except to abstain from wilfully injuring it, but in each of such cases it will be discovered that the special question presented here is not involved. *Toledo, etc., R. Co.* v. *Milligan* (1876), 52 Ind. 505, however, is closely in point. In that case the evidence disclosed the following facts: Appellee's pasture field adjoined appellant's track which was securely fenced. Appellee's horses escaped from the field through a gate left open by trespassers, the circumstances being such that the court found that appellee was not guilty of contributory negligence. The engineer of an approaching train, with knowledge of the presence of the horses, chased them down the track, increasing the speed of the train rather than diminishing it, until he ran the train against the animals and killed them. The court held the evidence sufficient to charge the company with the negligent killing of the horses. A study of the case will disclose that knowledge on the part of the operator of the train that the horses were on the track is the key to the decision.

*Chicago, etc., R. Co.* v. *Ramsey* (1907), 168 Ind. 390, 81 N. E. 79, 120 Am. St. 379, while reversed for defects in the special finding, is applicable here also, at least to the extent that the Supreme Court there recognizes the doctrine that even where cattle are wrongfully on a railroad track the duty to exercise care towards them may grow out of the situation, if known, a violation of which will constitute negligence. It appears from the opinion in that case that the second paragraph of complaint, like the complaint here, was based on the alleged negligence of the railroad company's servants in the

management of the train that killed the cattle involved. In addition, we learn from an examination of the transcript in that case that such paragraph alleged in substance that appellee's animals were on the track without negligence on his part; that appellant's servants operating the train knew of the presence of the animals on the track in time to avoid injuring them, by the exercise of due care, and that under such circumstances such servants negligently ran the train into the animals and killed them. Although the complaint states a cause of action at common law rather than under a statute, the court cites §5446 Burns 1914, Acts 1885 p. 148, which provides in substance that where animals have escaped to a railroad track through a gate at a private crossing and are killed or injured by cars or locomotives, the railroad company shall not be liable to pay damages therefor unless it shall be proved that such killing or injury was caused by the negligence of the servants of the company owning or operating the railroad. Although the complaint did not allege that fact, the evidence and the findings both disclose that the animals in fact escaped to the track through a gate at a private crossing. The court, applying to the case the principles of the common law to ascertain the presence or absence of negligence, said: "The railroad company owed the plaintiff no duty to be on the lookout for his cattle. They were wrongfully and unexpectedly on the right of way, while the company was running its train at a speed at a place where it had a right to run it unobstructed by the presence of cattle. If the employes in charge of the locomotive actually saw the steers on the track, and could have stopped the train with reasonable effort and safety, and avoided the injury, whether the failure to do so, under the circumstances, constituted negligence, was a ques-

tion of fact." In that case, it will be observed that the court recognizes as applicable the principle that a duty may arise out of a situation, if known, and that violation of such a duty will be negligence. By way of illustration and with a view to a deduction, we call attention to *Cincinnati, etc., R. Co.* v. *Hiltzhauer* (1885), 99 Ind. 486, and *Chicago, etc., R. Co.* v. *Fenn* (1891), 3 Ind. App. 250, 29 N. E. 790, each of which is representative of a class. These cases are similar in that each involves the killing of a domestic animal at a public highway crossing by a railroad train, such animals being on the public highway unattended, and there being no order of the board of commissioners permitting domestic animals to run at large. The negligence charged in each case was the failure to give the statutory signals. In the former case the owner voluntarily permitted the animal to run at large, and it was held that such fact constituted contributory negligence on his part barring a recovery. The court says that railroad companies are not liable for killing cattle upon public highway crossings in cases where the owner wrongfully permits them to run at large, and many authorities are cited. Of course, the language of the court must not be understood as excluding liability for a wilful killing. In the latter case the animals escaped from the owner's enclosure without negligence on his part, and the court held that as to such an animal it was the duty of the railroad company to give the statutory signals, and that the failure to do so was negligence, which if the proximate cause of the injury entitled the owner of the animals to a recovery, although they were not on the highway by strict right. It is evident that in the former case a recovery was denied on the ground that the contributory negligence of the owner of the animal in permitting it to be at

large unattended extended down to the time of the collision, and that such contributory negligence concurred with the negligence of the railroad company in producing the result complained of. But let us assume that under the circumstances otherwise surrounding such a case the servants of the railroad company in operating the train have knowledge of the position of the animal on the crossing, and that it is likely to be killed by the train colliding with it, and that by the exercise of reasonable care consistent with the duty that the company owes the traveling public, and having regard also for the preservation of its own property such a collision may be averted, Does any duty to exercise such care arise out of the situation? Or is it true that by reason of the fact that the animal is on the crossing through the negligent conduct of the owner, the operators of the train, knowing of its presence unattended there and that it is likely to be killed, may nevertheless proceed to that end with no resulting liability unless the act is wilfully done? As indicated, these questions under somewhat similar circumstances are left undecided in *Dennis* v. *Louisville, etc., R. Co., supra,* but *Toledo, etc., R. Co.* v. *Milligan, supra,* and *Chicago, etc., R. Co.* v. *Ramsey, supra,* at least bear very strongly towards answering the former question in the affirmative the latter in the negative. *Hohl* v. *Chicago, etc., R. Co.* (1895), 61 Minn. 321, 63 N. W. 742, 52 Am. St. 598, is instructive here: That decision is in complete harmony with both the Hiltzhauer and the Fenn cases, but in its discussion extends further than either of those cases. The doctrine of that case, as in the Hiltzhauer case is to the effect that where the common-law rule prevails, if the owner of a domestic animal has not kept it within his enclosure when he might have done so by proper care, he can not recover from the rail-

road company for running over it at a public highway crossing, without first showing some negligence in the management of the train, or the omission of some statutory duty after the animal is discovered; that in such case the animal is unlawfully at large by reason of the fault of the owner, and that therefore the duty of the railroad company to exercise care for its safety does not arise until it is actually discovered.

In the case at bar, there was no direct evidence that appellant's engineer in charge of the train actually saw the animals on or near the track until after three of them had been struck by the train, or that he saw the others in time to avoid contact with them by the exercise of reasonable care after so seeing them. If visual knowledge of the presence of animals on a railroad track is sufficient to call into action the duty to exercise reasonable care under given circumstances, we are unable to see any reason why knowledge obtained in any other manner is not effective to the same end under like circumstances. The evidence here is conclusive that the engineer did have knowledge sufficient to apprise him of the probable presence of the animals on or near the track at a point designated with a fair degree of accuracy. The situation then is not one where animals are unexpectedly encountered on the track. The engineer had creditable information that he probably would encounter them. Under such circumstances, appellant does not contend that the jury was unwarranted in finding from the evidence that appellant by its engineer failed in fact to exercise due care for the safety of the animals by keeping a reasonable lookout for them, and having discovered them by exercising such care to avoid injuring them, and as a consequence that appellant, by its engineer, was negligent in the mat-

ter, but rather appellant contends that if the animals were on the track without right, no legal duty to exercise reasonable care respecting them existed or arose, and therefore, there could be no available negligence. However, we are convinced from an analysis of the decisions referred to herein that appellant is wrong in its contention. Having knowledge of the probable presence of the animals on or near the track, as communicated to him by appellant's superintendent, a duty to maintain a reasonable lookout for the animals arose, although they were wrongfully on the track, and having discovered them, by means of such a lookout, a like duty to exercise reasonable care to avoid injuring them arose. We express no opinion respecting what would be such a reasonable lookout, or what would constitute such reasonable care, or whether as matter of law the duty in these respects was performed. All these matters were questions of fact for the jury to determine from the evidence, in view of the fact that appellant owed a duty also safely to carry and deliver at their destinations the passengers on the train. It owed a duty also to the commercial public and to itself in the preservation of its own property. *Pittsburgh, etc., R. Co.* v. *Stuart, supra.* All these questions were for the consideration of the jury under proper instructions from the court. The instructions are not before us, and we shall, therefore assume that the court performed its duty in this respect. It follows that the issue of negligence was properly in the case; that the evidence supporting it was properly submitted to the consideration of the jury. It results that the verdict is sustained by the evidence.

It is apparent that we have deduced as applicable here practically what has come to be known as the

doctrine of the last clear chance. That doctrine had its origin in a case involving the negligent killing of a domestic animal. See *Davies* v. *Mann* (1842), 10 Mees. and Wels. 546. It is in effect recognized in such cases. *Indianapolis, etc., R. Co.* v. *Caldwell* (1857), 9 Ind. 397; *Krenzer* v. *Pittsburgh, etc., R. Co.* (1898), 151 Ind. 587, 43 N. E. 649, 52 N. E. 220, 68 Am. St. 252; 1 R. C. L. 1192, and cases. Also in cases involving inanimate property. *Wright* v. *Brown* (1853), 4 Ind. 95, 58 Am. Dec. 622. For an elucidation of the doctrine see *Indianapolis Traction, etc., Co.* v. *Croly* (1913), 54 Ind. App. 566, 96 N. E. 973, 98 N. E. 1091.

The only other question presented is that the court erred in admitting certain testimony respecting experiments made subsequently to the killing of the animals, to ascertain the distance at which objects could be seen in the light of the headlight of train No. 55 at said place. These observations were made under conditions shown to be practically the same as those that existed at the time of the killing of the animals. In order that evidence of such a character may be admissible, it is not essential that the conditions be exactly reproduced in all their details. If so reproduced, credible evidence of an experiment and its results would amount to demonstration, and would be conclusive on the issue involved. It is sufficient if the conditions under which the experiment was made are shown to have been substantially the same as those that existed in the transaction being investigated. If substantially the same, any departure goes to the weight rather than the admissibility of the evidence. In determining whether the conditions are shown to be substantially the same, there is of necessity a requirement for the exercise of some discretionary

power by the trial court. Under these principles the court did not err in admitting such evidence. 5 Ency. Evidence 473 *et seq*; *Chicago, etc., R. Co.* v. *Champion* (1893), 9 Ind. App. 510, 36 N. E. 221, 37 N. E. 21, 53 Am. St. 357, 375, note; 4 Chamberlayne, Mod. Law of Ev. §3170. Judgment affirmed.

NOTE.—Reported in 109 N. E. 70. As to trespassing animals, see 81 Am. St. 446. As to the duty of a railroad to keep a lookout for animals on the track on fenced roads or where no duty to fence exists, see 3 Ann. Cas. 591. As to the duty of a railroad to blow whistle or give other warning to animal on track, see Ann. Cas. 1915 B 462. See, also, under (1) 33 Cyc 1224; (2) 33 Cyc 1309; (3) 3 Cyc 303; (4) 3 Cyc 348; (6) 17 Cyc 285; (7) 17 Cyc 276.