LARRY L. WECKER v. WARREN L. KILMER, M.D.

[No. 1272S165. Filed April 4, 1973.]

Lowell E. Enslen, McHie, Enslen & Moran, of Hammond, Rudolph Tanasijevich, of Hammond, for plaintiff-appellant.

Fred F. Eichhorn, Jr., David C. Jensen, Schroer, Eichhorn & Morrow, of Hammond, for defendant-appellee.

HUNTER, J.—This cause has been presented to this Court by the United States Court of Appeals for the Seventh Circuit on a certified question of law pursuant to Rule 15 (N) of the Indiana Rules of Appellate Procedure,[1] which we have ac-

1. (N) Certification of Questions of State Law From Federal Courts. When it shall appear to the Supreme Court of the United States, to any circuit court of appeals of the United States, or to the court of appeals

cepted. On August 18, 1967, plaintiff while riding in a vehicle driven by his mother, was injured in a collision with another vehicle in LaPorte County, Indiana. The other vehicle was driven either by John D. Lloyd or Karen Lee Lloyd of Canton, New York. On the same day, plaintiff received medical attention from defendant, a physician. In this suit plaintiff alleges that defendant was negligent in his care and treatment.

On February 20, 1968, plaintiff executed a release in favor of the Lloyds. The release reads as follows:

"FOR AND IN CONSIDERATION OF the payment to me/us of the sum of ($25,621.00) Twenty Five Thousand Six Hundred Twenty One and 00/100 Dollars, and other good and valuable consideration, we being of lawful age, have released and discharged, and by these presents do for myself/ourselves, my/our heirs, executors, administrators and assigns, release, acquit and forever discharge John D. Lloyd & the Estate of Karen Lee Lloyd, Deceased, Canton St. Lawrence County, New York, and any and all other persons, firms and corporations, whether herein named or referred to or not, of and from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses, compensation, and all consequential damage on account of, or in any way growing out of, any and all known and unknown personal injuries and death and property damage resulting or to result from accident that occurred on or about the 18th day of August, 1967, at or near U.S. Highway #30, 1½ miles West of Wanatah, LaPorte County, Indiana.

"I/we hereby declare and represent that the injuries sustained may be permanent and progressive and that recovery therefrom is uncertain and indefinite, and in making this release and agreement it is understood and agreed that I/we rely wholly upon my/our own judgment, belief and knowledge of the nature, extent and duration of said injuries, and that I/we have not been influenced to any extent whatever in making this release by any representa-

of the District of Columbia, that there are involved in any proceeding before it questions or propositions of the laws of this state, which are determinative of the said cause, and there are no clear controlling precedents in the decisions of the Supreme Court of this State, such federal appellate court may certify such questions or propositions of the laws of this state to the Supreme Court of this state for instructions concerning such questions or propositions of state law which certificate the Supreme Court of this state, by written opinion, may answer.

tions or statements regarding said injuries, or regarding any other matters, made by the persons, firms or corporations who are hereby released, or by any person or persons representing him or them, or by any physician or surgeon by him or them employed.

"I/we understand that this settlement is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of the persons, firms and corporations hereby released by whom liability is expressly denied.

"It is agreed that distribution of the above sum shall be made as follows: _____
_____

"This release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractual and not a mere recital.

"I/we further state that I/we have carefully read the foregoing release and know the contents thereof, and I/we sign the same as my/our own free act.

"WITNESS my hand and seal this 20th day of February, 1968.

"CAUTION! READ BEFORE SIGNING
/s/ Larry L. Wecker _____ (SEAL)
_____ (SEAL)"

The consideration of $25,261.00 was paid by Nationwide Insurance Company, liability carrier of the Lloyds. All alleged acts of malpractice of defendent were performed prior to execution of the release.

After plaintiff filed his complaint in the United States District Court for the Northern District of Indiana, defendant filed a motion for summary judgment which was granted. An appeal was taken to the Seventh Circuit Court of Appeals. The Seventh Circuit stated that whether defendant is entitled to the benefit of the release is controlled by Indiana law. There being no clear controlling precedents in the decisions of the Supreme Court of Indiana, the Seventh Circuit requested this Court to provide them with instructions concerning the following question:

"As a matter of Indiana law does the release dated February 20, 1968, quoted above, bar the claim asserted by plaintiff against the defendant in this litigation?"

We are faced with a situation where an alleged subsequent tortfeasor aggravates an injury caused by the alleged original tortfeasor. We must decide if the above described general release accrues to the benefit of the subsequent tortfeasor as well as the original tortfeasor. The defendant argues that the weight of authority is of the view that a general release to one responsible for the original injury bars an action by the injured party against a physician or surgeon for negligent treatment of the injury, citing 40 A. L. R. 2d 1075. The rationale for this point of view is based on the principle of proximate causation. The theory goes that the aggravation of injuries is foreseeable by the original tortfeasor and proximately caused by his actions. Indiana has at least one case espousing this view of proximate cause. See *Suelzer* v. *Carpenter* (1916), 183 Ind. 23, 107 N. E. 467. (However this case did not involve a release). Other jurisdictions then apply this proximate cause theory to a general release given to the original wrongdoer. The argument goes that since a general release to the original tortfeasor would include release of liability for aggravation proximately resulting, such a release must be deemed to embrace any claim for the same aggravation against the negligent physician; otherwise, the injured party would receive double satisfaction for the same injury. See *Derby* v. *Prewitt* (1962), 12 N. Y. 2d 100, 187 N. E. 2d 556, 558.

This fear of double recovery is unfounded because the amount received from the original tortfeasor for the release would have to be credited against any amounts received in an action against a subsequent tortfeasor. Thus, if the injured party had received full satisfaction for all his injuries from the original tortfeasor he would be denied any recovery in an action against the subsequent tortfeasor. If less than full satisfaction were received from the original tortfeasor then

that amount would have to be credited against any recovery received from the subsequent tortfeasor so that the injured party would never receive more than full satisfaction. In addition, the subsequent tortfeasor will never be liable for more damages than those caused by his own actions.

This allegedly prevailing view is also illogical because the alleged original tortfeasor has *disclaimed any liability* in the release. If one were injured in an accident where no one was at fault and one's injuries were subsequently aggravated by the negligent acts of a physician, one would not be without a cause of action against the physician. We have no proof that the *alleged* original tortfeasor was in fact a tortfeasor. It should only be to avoid unjust enrichment and prevent double recovery that any monies received from other sources would be credited against a recovery from the negligent physician.

We note that this so-called prevailing view has received intensive criticism from modern commentators.

"Dean Wigmore has denounced the doctrine as a 'surviving relic of the Cokian period of metaphysics' (17 Ill. L. Rev. 563), Dean Prosser has criticized it as 'at best an antiquated survival of an arbitrary common law procedural concept' (Torts, p. 244) and Mr. Justice Rutledge, speaking for the Court of Appeals for the District of Columbia, observed that 'The rule's results are incongruous. More often than otherwise they are unjust and unintended. Wrongdoers who do not make or share in making reparation are discharged, while one willing to right the wrong and no more guilty bears the whole loss. * * * Many, not knowing this, accept less only to find later they have walked into a trap. The rule shortchanges the claimant or overcharges the person who settles, as the recurring volume and pattern of litigation show. Finally, it is anomalous in legal theory, giving tortfeasors an advantage wholly inconsistent with the nature of their liability.'" *Derby* v. *Prewitt* (1962), 12 N. Y. 2d 100, 104, 187 N. E. 2d 556, 558.

We also note that the "prevailing view" has become continually less acceptable to courts over the past two decades. See Anno. 39 A. L. R. 3d 260.

Two factors should be controlling in determining the effect of an agreement purporting to operate as a release:

(1) Whether the injured party has received full satisfaction; and

(2) Whether the parties *intended* that the release be in full satisfaction of the injured party's claim, thus releasing all successive tortfeasors from liability. See *Harper & James, Torts* (1956), § 10.1, *Prosser on Torts* (4th ed. 1971) at 304. Both are questions of fact and normally to be determined by the jury. The actual form or title of the release is immaterial and parol evidence should be permitted to determine the intent of the parties.

> "A release ought to be construed from the standpoint which the parties occupied at the time of its execution.
> To enable a court to so construe a release, extrinsic evidence is admissible to explain the circumstances under which it was executed, and the nature of the transaction to which it was designed to apply . . ." *Rowe* v. *Rand* (1887), 111 Ind. 206, 211.

Also, the position of the alleged subsequent tortfeasor under the release is somewhat analagous to an alleged third party beneficiary.

> "The intent of the parties is the controlling factor in resolving the question of the rights of a third party beneficiary: such determination must be established from the manifestations of the parties as exhibited by the terms of the written [instrument] *and testimony related thereto.*" (our emphasis) *Loper* v. *Standard Oil Company* (1965), 138 Ind. App. 84, 90, 211 N. E. 2d 797, 801.

It is therefore clear that the above quoted release, standing alone, does *not* bar the claim asserted by plaintiff against the defendant in this litigation. The controlling factors are whether the plaintiff in fact received full satisfaction for his injuries and whether the parties to the release intended it to be in full satisfaction, both of which require a factual determination beyond the face of the instrument.

The Clerk of this Court is now hereby ordered and directed to certify a copy of this opinion to the Honorable John Paul Stevens, Judge and the Honorable Luther M. Swygert, Chief Judge of the United States Court of Appeals for the Seventh Circuit.

Arterburn, C.J., DeBruler, Givan and Prentice, JJ., concur.

NOTE.—Reported in 294 N. E. 2d 132.