KRISTINE AMBROSE, A MINOR, ETC. ET AL. *v.* KENT ISLAND YACHT CLUB, INC. ET AL.

[No. 847, September Term, 1973.]

*Decided July 17, 1974.*

The cause was argued before THOMPSON, DAVIDSON and LOWE, JJ.

*Jonathan Azrael,* with whom were *Edward Azrael* and *Azrael & Gann* on the brief, for appellants.

*Patrick G. Cullen* and *Philip O. Roach,* with whom was *Robert R. Price, Jr.,* on the brief, for appellees.

THOMPSON, J., delivered the opinion of the Court.

Kristine Ambrose, a young child, was injured when she was struck by a baseball which was tossed during a game of catch between two teenage boys. Kristine together with her father and mother filed suit against the Kent Island Yacht Club, Inc. and the American Power Boat Association in the Circuit Court for Queen Anne's County; the suit was thereafter removed to Kent County. The defendants filed a third party claim against Robert P. Ambrose, Kristine's uncle. After discovery proceedings the original defendants filed motions for summary judgment, which were granted. Appellants contend that the trial judge should have submitted the issue of the defendants' negligence to a jury. The facts, as gathered from the depositions, are as follows:

On May 23, 1971, Kent Island Yacht Club, Inc. held a powerboat regatta, *i.e.,* boat races, which the public was

invited to attend without charge. The yacht club occupies a tract of land, estimated by one witness to contain 15 acres and by another to contain 43 acres, at Chester, Maryland; the races were held on the waters adjacent thereto. Contained within the clubhouse grounds was a small area equipped with a few picnic type tables; for the convenience of guests, there were concession stands nearby which dispensed food and beverages. There was no playground area at the club and the only amusement device for children was a swing set located approximately 60 feet from the picnic tables.

The annual regatta, which had been held for some 18 years, was sanctioned by the American Power Boat Association, a national organization concerned with motorboat racing. A permit to hold the ragatta had also been obtained from the United States Coast Guard, which prescribed certain measures to be taken to insure the safety on the water of participants and spectators. As a precautionary measure, the club arranged to have present the County Sheriff, the Deputy Sheriff and a Maryland State Trooper. A number of uniformed club officers and former officers were present to patrol the grounds to keep an eye out for anything that they observed that might require attention. In addition, a nurse, a doctor and an ambulance were present.

The Eugene T. Ambrose family attended the regatta. Their family consists of Eugene Ambrose and Rosemarie Ambrose, the parents, Mary Kathleen Baugher and Kim Baugher, Mrs. Ambrose's children by a former marriage, and the injured child, Kristine Ambrose, the daughter of Rosemarie and Eugene. They arrived at the yacht club around noon and went to the picnic area. Subsequently, eight year old Michael Gray arrived with his mother, Blanche Ambrose and step-father, Robert P. Ambrose. They brought with them a baseball and two gloves, which Michael and his step-father used to play catch for 10 or 15 minutes. Kathleen then played catch with Michael for 5 or 10 minutes before giving her glove to an unidentified boy in his early teens. He played catch with Michael for about 10 minutes,

until a second teenage boy asked Michael for his glove. The two youths, who were never identified, started throwing the ball back and forth. The boys would pitch the ball to each other and try to throw "strikes". "They were throwing the ball hard — a lot harder than Kathleen and Michael had thrown it — like they throw in baseball games." The ball was thrown in a direct line with the table at which Kristine and her mother were sitting. The boys were playing ball in this manner for about half an hour, when Kristine, age four, was struck in the head by a passed ball. At no time during the period that the ball was being used did Kathleen notice any officials in the area, nor did any representative of the club, or anyone else, suggest that the ball playing cease. While the ball game was in progress, the nearest player was about seven feet from Rosemarie Ambrose, who was watching the races and talking to Blanche Ambrose. Neither mother was aware of the game of catch.

No one recalls seeing any representative of the club in the picnic area during the time that the ball was being thrown. Except for a statement by the club commodore, Charles J. Reynolds, in his deposition that a club board member had told him some time after the incident that he had seen someone with a ball on the day of the accident, there is no evidence that anyone on behalf of the club was aware of the presence of the ball. Although the name and address of this individual was disclosed by Mr. Reynolds, a deposition was not taken. Further, there is no indication that the ball observed by the board member was the same one involved in this incident.

It was estimated that 800 to 900 people attended the regatta. The commodore testified that, in a crowded situation, the club would not ordinarily allow ball playing, moreover, if club representatives saw it, they would endeavor to stop it. Alton Pierson, the regatta chairman, did not know anybody who observed ball playing during the day of the regatta. If he had seen people playing catch with a hard ball, he testified, he "probably wouldn't say anything to them."

Counsel agree that a landowner is not an insurer of an

invitee upon his premises, but need only exercise reasonable care to see that the invitee is not injured through the negligence of third persons, *Hawkins v. Southern Maryland Agricultural Fair Assn. of Prince George's County,* 237 Md. 90, 94, 205 A. 2d 286 (1964). Prosser explicates further the responsibility which a landowner bears to protect invitees upon his land from dangerous acts of third parties:

"... [T]he possessor must exercise the power of control or expulsion which his occupation of the premises gives him over the conduct of a third person who may be present, to prevent injury to the visitor at his hands. He must act as a reasonable man to avoid harm from the negligence ... of other persons who have entered [the premises]. ... But he is required to take action only when he has *reason to believe,* from what *he has observed or from past experience,* that the conduct of the other will be dangerous to the invitee." (Emphasis added.) W. Prosser, *Torts,* 395 (4th ed. 1971).

Although counsel agree as to the fundamental test for negligence, they disagree sharply in its application to the facts of the present case. The appellants, the injured girl and her parents, rely heavily upon *State v. Sammon,* 171 Md. 178, 189 A. 265 (1936), wherein the Court held that where a boy attending an air circus was injured when struck by a plane coming in for a landing, a jury question was presented: (1) because the defendant permitted the unrestricted use of the field by other aircraft during the progress of an air circus by which latter event the attention of the crowd was being held and diverted, and (2) because the defendant permitted an old road leading near the end of the runway to be used, without any warning signs, while the air circus was in progress. We think the appellants' reliance is misplaced. In *Sammon,* there was affirmative evidence of primary negligence on the part of the defendant, as previously pointed out; whereas, in the instant case, there was no such affirmative evidence of Kent Island Yacht Club being primarily negligent. We do not regard the facts that officers or yacht club officials were not in the picnic area and failed to observe and stop a game of

catch, brief in duration, to comprise such affirmative acts of primary negligence.

We find *Mathis v. Atlantic Aircraft*, 216 Md. 262, 140 A. 2d 156 (1958) to be of particular interest. In *Mathis* the Court quoted the paragraph above from *Prosser*, distinguished *Sammon* and held that the proprietor of land had no obligation to anticipate the negligent acts of a third party. Concluding that the proprietor was not primarily negligent, the Court said: "In cases where there is no indication that the third party is likely to cause harm, there will be no liability." *Id.* at 270. So in the case at bar, Kent Island Yacht Club had not observed, experienced nor was it reasonably indicated that such a freakish type accident could occur. Primary negligence does not lie for a failure to anticipate such accidents by the landowner who is not an insurer. *See Hawkins v. Southern Md. Agricultural Fair Assn.*, *supra* at 97, which refused to find primary negligence in "... an alleged isolated act of casual or instantaneous negligence ... of which the owner had no knowledge, actual or constructive."

We likewise regard the appellants' reliance on *Holler v. Lowery*, 175 Md. 149, 200 A. 353 (1938); *State v. Hecht Company*, 165 Md. 415, 169 A. 311 (1933) and *Lashley v. Dawson*, 162 Md. 549, 160 A. 738 (1932) as misplaced. In *State v. Hecht*, the defendant knowingly permitted an elevator gate to be secured by a lock not in conformity with local ordinance. Violation of the statute constituted *prima facie* negligence sufficient to overcome a motion for directed verdict. No such presumption favors the appellant in the case at bar; in fact, we have held the appellees not to be guilty of primary negligence. *Holler v. Lowery* and *Lashley v. Dawson* do not involve landowner premises liability, rather, they are automobile cases which question whether the intervening negligence of a third party was either a superseding or a foreseeable cause.

The question of foreseeability is involved in determining whether or not the defendant owes to the plaintiff a legal duty and whether or not the defendants' negligence is the proximate cause of the injury. *Aleshire v. State*, 225 Md. 355,

365-66, 170 A. 2d 758 (1961). In the instant case, there is no need for us to discuss this technical difference because it does not appear to us that the officials had any reason to anticipate that two boys would throw a baseball in a dangerous manner during a powerboat race. They provided a number of persons to patrol the grounds to observe improper conduct and, although there is a suggestion that one official saw a ball, there is no testimony [1] to tie that ball to the injuries. In order to recover, it was incumbent upon the plaintiffs to show the officials had reason to anticipate that a baseball would be thrown under conditions that would present a danger to its invitees. *Hawkins, Mathis* and *Prosser* all *supra.* There is no evidence to show that such an incident had ever happened before or that the club had any warning or reason to expect that it was likely to take place. It was not a danger which the defendants were bound to have foreseen and guarded against; consequently, their failure to prevent the incident did not constitute primary negligence.

The record fails to show any responsibility of the American Power Boat Association for the injury in question. As pointed out by the trial judge, the granting of the summary judgment in favor of two defendants effectively disposes of the third party claim.

*Judgments affirmed.*
*Appellants to pay the costs.*

---

1. There was ample opportunity for that witness's testimony to have been deponed had it been of any particular benefit to either party.