STATE of Indiana, Appellant
(Defendant Below),

v.

Donald D. TOTTY, Appellee
(Plaintiff Below),

and

Loretta Carol Graf, Administratrix of the
Estate of Dennis A. Graf, Deceased, Ap-
pellee (Intervening Plaintiff Below),

and

Tommy L. Jenkins, Executor of the Last
Will and Testament of Sue Ann Jenkins,
Deceased, Appellee (Intervening Plain-
tiff Below).

No. 1–1179A301.

Court of Appeals of Indiana,
First District.

July 21, 1981.

Rehearing Denied August 25, 1981.

Linley E. Pearson, Atty. Gen., Thomas R. Hamill, Deputy Atty. Gen., Indianapolis, for appellant.

Donald Forrest, New Albany, for Donald Totty.

Michael G. Naville, Naville, Leist & Naville, New Albany, for Tommy L. Jenkins.

Basil H. Lorch, III, Lorch & Lorch, New Albany, for Loretta Carol Graf.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

This is an appeal by the State of Indiana from judgments entered in the Floyd Circuit Court (1) in favor of Donald D. Totty (Totty) for personal injuries, (2) in favor of Loretta Carol Graf, Administratrix of the Estate of Dennis A. Graf, Deceased (Graf), for wrongful death, and (3) in favor of Tommy L. Jenkins, Executor of the Last Will and Testament of Sue Ann Jenkins, Deceased (Jenkins), for wrongful death. The judgments, after a trial by jury, grew out of a motor vehicle collision on U.S. 150 in Floyd County on October 27, 1972.

## STATEMENT OF THE FACTS

The facts most favorable to the verdict are as follows: U. S. Highway 150 is a highway under the control of the State of Indiana. At the point of the collision at the west edge of Galena, in Floyd County, it is a two lane highway which curves to the right on a down grade as it leaves Galena in a westerly direction. The speed limit west of the point of the collision at that time was 65 m.p.h. and east of the point, 40 m.p.h. The road was marked with a double yellow line indicating a "no passing" zone in either direction, but no "slippery when wet" signs existed in the vicinity of the point of the collision. The asphalt surface of U.S. 150, while not having been entirely resurfaced, had been extensively patched in August of 1972, and had become thereafter very slick when wet. Witnesses testified that when the road was wet vehicles had a tendency to slide, and because of this condition they had even altered their driving habits on this section of road. A school bus driver testified that prior to the accident his bus slid on the curve in question in the rain; he notified employees of the highway department of this fact and suggested that something should be done. One Una Hartfield testified that approximately two weeks after the patching operation her car had slid on the road. She notified the highway department at New Albany by phone of her experience, and thereafter the highway department attempted, but failed, to alleviate the problem by sanding the road. One witness characterized the road as "a sheet of glass" when wet. At the scene of the wreck some vehicles slipped and slid, and a fire truck, called to the scene, simply slid off to the low side of the road. The State's tests, made prior to the wreck, as well as

tests later performed by plaintiff's expert witness, William Tonn, revealed abnormal slickness.

On the afternoon of October 27, 1972, a tractor-trailer owned by T.I.M.E.–DC, Inc. (T.I.M.E.) was being driven eastward in the rain by James Erwin. He was accompanied by Totty, an assistant driver, and was approaching Galena from the west on U.S. 150. As the truck proceeded up the grade and around the curve to the left at approximately 40 m. p. h., it slid on the rain-slick road from the east bound, high side of U.S. 150, across the center line to the low, west bound lane, and into the two cars being driven westward by the decedents of Graf and Jenkins, causing their deaths. Totty was thrown from the cab of the truck and injured.

Totty filed his complaint for damages for personal injuries on September 18, 1974, alleging negligence in design, construction, and repair of U.S. 150 at the scene of the wreck. On October 18, 1974, Graf and Jenkins filed their joint motion to intervene as plaintiffs, seeking damages for the wrongful death of their respective decedents, alleging in their complaints negligence in maintenance, a missing speed sign, and negligence in design, in that the road was too steep. The trial court permitted Graf and Jenkins to intervene.

## ISSUES

The State presents six issues for review, as follows:

I. Did the trial court err in failing to grant the State's motion for summary judgment against Graf and Jenkins, and further err in failing to grant the State's motion for a judgment on the evidence at the close of all the evidence, which various motions were based on release agreements executed by Graf and Jenkins to T.I.M.E.;

II. Did the trial court err in permitting William Tonn, an engineer not admitted to practice in Indiana, to testify, the sole objection to his qualifications being that he was not admitted to practice in Indiana;

III. Did the trial court err in admitting plaintiff's exhibits N, O, and P;

IV. Did the trial court err in allowing Graf and Jenkins to testify regarding the circumstances of the execution of release agreements executed by them to T.I.M.E. regarding their respective intent and understanding of the terms of the release;

V. Did the trial court err in giving plaintiff's instructions Nos. 1, 2, 4, 7, and 10; and

VI. Sufficiency of the evidence.

*Issues I and IV. Release of Joint Tort Feasors*

The State's motions for summary judgment and the supporting materials which were filed therewith, and were later presented as evidence at the trial, disclosed that Graf and Jenkins had previously filed separate suits for the wrongful death of their respective decedents on account of the wreck in issue here in the United States District Court for the Southern District of Indiana against T.I.M.E., alleging the negligent operation of the truck as the cause of their decedents' deaths. These causes of action were settled, and stipulations of dismissal alleging "full settlement" were filed in court. The District Court found that the causes had been fully compromised and settled and ordered the cases dismissed with prejudice. On the date of the settlement, June 22, 1974, Graf and Jenkins executed releases to T.I.M.E. in consideration of $60,000 and $75,000, respectively. The documents show that the parties intended thereby

"[to] release, acquit and forever discharge T.I.M.E.–DC, Inc., its heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable, or who might be claimed to be liable, of and from any and all actions, causes of action, claims, demands, costs, loss of services, expenses and compensation, on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage resulting or to result from an accident that occurred

on or about the *27th* day of *October* 19 72 at or near U. S. Highway 150 at a point approximately .05 miles west of the limits of the Town of Galena, Floyd County, Indiana."

No reservation of any cause of action was contained in the releases. Totty filed his complaint on September 18, 1974. Graf and Jenkins petitioned to intervene on October 18, 1974.

The State first raised the issue of the release of joint tort-feasors by a motion for summary judgment against Graf and Jenkins filed on July 10, 1975. The motion was overruled. The issue was stated in the pretrial contentions filed by the State pursuant to the pretrial order. Subsequent motions for summary judgment raising the issue of the release were filed by the State on June 11, 1979, the first day of the trial, prior to the commencement thereof. The issue was litigated with the evidence, as stated above, being admitted at the trial. The State moved for a judgment on the evidence at the close of Graf's and Jenkin's case-in-chief, and again at the close of all of the evidence, raising in those motions the issue of the release of joint tort-feasors. The motions were denied. The denial of the motion for summary judgment and the denial of the motion for judgment on the evidence at the close of all of the evidence were preserved in the motion to correct error and are assigned as error on appeal. The facts relative to the suits and releases are undisputed.

■ Dispositive of this issue is *Bellew v. Byers*, (1979) Ind., 396 N.E.2d 335, the operative facts of which are remarkably similar to those in the case at bar. In *Bellew, supra*, the three minor children of Virginia Bellew were injured while riding in a truck which was struck by a vehicle driven by James Nation, who had attempted to pass an Indiana National Guard truck driven by Randall Byers. A "Minor's Compromise of Claim" was approved in the Morgan Circuit Court for the settlement with Nation of any liability on his part arising out of the accident. Virginia Bellew, as guardian and pursuant to court approval, executed a general release upon the payment of $24,462.14. Subsequently an action was commenced by Virginia Bellew, as guardian, on account of the same wreck against Byers, the State of Indiana, the Indiana National Guard, and the Indiana State Highway Commission. The Supreme Court sustained the action of the trial court in granting a summary judgment to all defendants on the basis that the release of one joint tort-feasor released all.

The court stated:

"This Court has recently re-affirmed the longstanding rule of law that a release of one joint tort-feasor is a release of all. *Cooper v. Robert Hall Clothes, Inc.* (1979) Ind., 390 N.E.2d 155. The reasons for this rule are obvious. First, it prevents an unfair prejudice against the defendant by precluding the plaintiff from recovering in excess of his injuries by successively obtaining settlements from the various tort-feasors in return for releases. Second, joint tort-feasors 'constitute, in a sense, one entity, each of them being jointly and severally liable for injury to the plaintiff.' 390 N.E.2d at 157. A release of one joint tort-feasor in effect releases the entire 'entity.' Accordingly, to release one is to release all of the others."

396 N.E.2d at 336–337.

In *Cooper v. Robert Hall Clothes, Inc.*, (1979) Ind., 390 N.E.2d 155, the plaintiff had made specific reservation in a prior release of her cause of action against Robert Hall, but to no avail.

The court further held in *Bellew, supra*, that the intent of the plaintiff in executing the release was immaterial, because a total and complete release of Nation released the other tort-feasors as a matter of law.

Graf and Jenkins attempt to distinguish the operation of the rule in *Bellew, supra*, and *Cooper, supra*, with the argument that the State and T.I.M.E. were not joint tort-feasors, but concurrent tort-feasors who did not share a common duty and did not act in concert with a common intent. They concede that the rule is clear that *joint* tort-feasors are released by the release of one, but contend that *concurrent* tort-feasors are

not. They argue that concurrent tort-feasors are not the one entity referred to in *Bellew, supra.* In support of this argument they cite *Wecker v. Kilmer,* (1973) 260 Ind. 198, 294 N.E.2d 132, for the proposition that in cases involving independent and subsequent tort-feasors evidence can be admitted to show the intent of the plaintiff in executing a release. In *Wecker, supra,* the question was whether a release given to a defendant motorist in a highway accident case could be set up in defense to a suit against a physician in a malpractice action for treatment of the injuries received in the wreck. We do not think *Wecker, supra,* is applicable to the facts here.

We do not find it necessary to unduly prolong this discussion by a review of various arguments advanced by Graf and Jenkins, or to analyze the authorities cited by them from other jurisdictions. *Bellew, supra,* is on point. That case involves a wreck on a highway, a claim against a private trucking company, a settlement and general release of that claim, and a subsequent suit against, among others, the Indiana State Highway Commission and the State of Indiana. The court held the release of the truck company released the State. The facts in that case and the case at bar are nearly identical. In *Bellew, supra,* the court clearly treated the parties as joint tort-feasors for the purposes of the rule.

■ Graf and Jenkins next claim that the State waived its right to raise the question of the release of joint tort-feasors. First, they claim that the State did not affirmatively plead the issue in its answer, citing *Weenig v. Wood,* (1976) 169 Ind.App. 413, 349 N.E.2d 235. *Weenig, supra,* held that the failure to raise the question of the release of a joint tort-feasor in the answer or other pleading or to litigate it at trial effected a waiver of the issue, even though a summary judgment raising that issue had been filed and denied. The court held that the issue was an affirmative defense, and, under Ind.Rules of Procedure, Trial Rule 8(C), if it was not raised by answer it was waived. That case is distinguishable. Here, the inclusion of the issue of the release of joint tort-feasors in the State's pretrial contentions, filed pursuant to the pretrial order, superseded the answer and made it a properly triable issue. *City of Hammond v. Drangmeister,* (1977) 173 Ind. App. 476, 364 N.E.2d 157. Further, the issue was litigated, and made the subject of the State's motions for a judgment on the evidence at the close of the plaintiffs' cases-in-chief and again at the close of all of the evidence.

Secondly, Graf and Jenkins claim that the State did not carry its burden of proof. We have held that the State was discharged as a matter of law above, thus disposing of this contention.

■ Thirdly, Graf and Jenkins contend that the State waived the right to raise the question of the release by tendering an instruction favoring plaintiff's theory of the operation of the release. The authorities they cite are to the effect that failure to object to the giving of an instruction effects a waiver of the right to question the instruction. Those authorities are not relevant here. We know of no authority which proclaims that an instruction, tendered and given after the close of all the evidence, waives the right of a defendant to appeal an erroneous ruling on a motion for judgment on the evidence. A ruling on a denial of a motion for summary judgment may be appealed after the rendition of a judgment upon a trial on the merits. Ind.Rules of Procedure, Trial Rule 56(E). *See Manning v. Allgood,* (1980) Ind.App., 412 N.E.2d 811; *Pitts v. Wooldridge,* (1974) 161 Ind.App. 404, 315 N.E.2d 736.

We hold that the state of the record is such that the State did not waive its right to challenge the ruling denying the summary judgment or the ruling denying the motion for judgment on the evidence at the close of all of the evidence.

The judgments in favor of Graf and Jenkins are reversed and the trial court is ordered to enter judgment in favor of the State.

*Issue II. Expert witness*

 The State contends that the court erred in permitting William Tonn to testify as an expert witness in engineering matters. Tonn holds B.S., M.S., and Ph.D. degrees in engineering from the University of Texas, and is licensed in Texas and Louisiana. He has practiced many years, was a member of a research staff at Massachusetts Institute of Technology during World War II, and belongs to numerous professional societies. However, he is not admitted to practice as an engineer in Indiana pursuant to Ind.Code 25–31–1–1 *et seq.*, which is the State's sole objection to his competency as an expert witness.

We recently ruled against the State on this issue in *State v. Maudlin*, (1981) Ind. App., 416 N.E.2d 477. We held that a qualified practitioner was not barred from testifying in courts in this state as an expert witness merely because he has not been admitted to practice here. We further held that whether an expert possessed the necessary qualifications was a matter within the sound discretion of the trial court.

*Issue III. Exhibits*

The court admitted, over the State's objection, the written results of skid tests performed on U.S. 150 by the Research and Training Center of the Indiana State Highway Department on July 15, 1970, and October 3, 1972. The tests were conducted one-half mile on each side of the scene of this wreck. The 1970 report was marked exhibit N and the 1972 report was marked exhibit O. The court also admitted exhibit P, a sufficiency study performed on U.S. 150. These reports and studies tended to show a greater than average slickness and substandard safety. The State contends that the purpose of making those tests was to fulfill a requirement of a statute for the study of future highway construction, and not for the purpose of setting signs or making other corrections. The State contends it was not a warning tool and argues that the evidence was prejudicial and tended to mislead the jury. We disagree.

 The admission of evidence is a matter within the sound discretion of the trial court. *Indiana National Corporation v. FACO, Inc.*, (1980) Ind.App., 400 N.E.2d 202. Relevance is the logical tendency of evidence to prove a material fact. *Lawrence v. State*, (1972) 259 Ind. 306, 286 N.E.2d 830. If the evidence has a tendency to prove a fact in issue it is admissible, even though its weight is slight. *City of Indianapolis v. Ervin*, (1980) Ind.App., 405 N.E.2d 55.

 The issues here were road slickness and the absence of proper signs. The State concedes that knowledge, actual or constructive, of the condition of U.S. 150 was an issue. Therefore, the results of the State's tests on this road were relevant. The court did not err in admitting the evidence.

*Issue V. Instructions*

The court gave plaintiff's instruction No. 1, a verbatim recitation of Ind.Code 8–13–1–5, whereby the jury was advised the Indiana State Highway Commission had the power and duty to construct, reconstruct, maintain, and repair the State's highways. The State's objection to this instruction is that it does not contain the last sentence of Indiana Pattern Jury Instruction 15.01, which provides,

"If you find from a preponderance of the evidence that the defendant violated the statute on the occasion in question and that the violation was without excuse or justification such conduct would constitute negligence on the part of the defendant."

The State contends that the jury remained unguided in the absence of the quoted language on how to consider the facts in light of the statute. The instruction was therefore confusing and misleading and should not have been given, citing *Brewer v. State*, (1969) 253 Ind. 154, 252 N.E.2d 429.

 The only purpose we can perceive for the instruction was to inform the jury that the State had control over its highways, and had a duty to repair and maintain them. It is axiomatic that control over the instrumentality and duty by a defend-

ant are essential elements of a tort claim, and are elements of the plaintiff's claim here.

■ Instructions must be considered as a whole, and with reference to each other. A case will not be reversed even though some one instruction does not fully state the law, if there are other instructions which remedy the deficiency. *Thanos v. Fox*, (1958) 128 Ind.App. 416, 149 N.E.2d 315. Examination of the record reveals such to be the case here. We are of the opinion the State's objection is without merit.

■ The court gave plaintiff's instruction No. 2 which reads as follows:

"The foundation of liability is knowledge, or what is deemed in law to be the same thing, namely, the opportunity by the exercise of reasonable diligence to acquire knowledge of peril which subsequently results in injury. One under a duty to use due care for which knowledge is necessary cannot escape liability for negligence because of voluntary ignorance, and where a situation suggests investigation and inspection in order that the dangers may fully appear, the duty to make such investigation and inspection is imposed."

The State contends this instruction imposes a duty in excess of the duty to use reasonable care. We disagree. This is a constructive knowledge instruction. A defendant is charged with knowledge of what could be discovered by the exercise of reasonable care.

The language of the instruction is taken from 21 I.L.E. *Negligence* § 4 (1959). I.L.E., in turn, is supported by *City of Michigan City v. Rudolph*, (1938) 104 Ind.App. 643, 12 N.E.2d 970, which is a street negligence case. In *Hunsberger v. Wyman*, (1966) 247 Ind. 369, 216 N.E.2d 345, 348, our Supreme Court, quoting I.L.E., stated:

"In order for an act or an omission to constitute negligence, a person to be charged must have knowledge or notice that such act or omission involved danger to another.

'The foundation of liability is knowledge, or what is deemed in law to be the same thing, namely, the opportunity by the exercise of reasonable diligence to acquire knowledge of peril. * * *' 21 I.L.E. Negligence § 4, p. 266.

See also *Nisbet v. Van Tuyl* (7 Cir., 1957), 241 F.2d 874.

Where there is no knowledge, actual or constructive, of danger or peril on the part of a defendant, he cannot be charged with negligence. *Kennedy v. Southern Fire Brick and Clay Company, Inc.* (1927), 86 Ind.App. 629, 159 N.E. 1."

Admittedly, the language of the instruction, being a copy of text-book law, is not in the form in which instructions are usually cast, and the instruction could be subject to criticism by purists that it is an abstract statement of the law. However, we are of the opinion that it is a correct statement of the law, and the jury was properly and helpfully instructed by it.

■ The court gave plaintiff's instruction No. 4, an intervening cause instruction, as follows:

"An intervening cause, with respect to the doctrine of proximate cause, means, not a concurrent and contributing cause, but a superseding cause, which is itself the natural and logical cause of the harm.

Accordingly, if a harm is a natural, probable, and foreseeable consequence of the first negligent act or omission, the original wrong doer may be held liable even though other independent agencies intervene between its negligence and the ultimate result."

The language of this instruction finds support in 21 I.L.E. *Negligence* § 67, as well as *Northern Indiana Transit, Inc. v. Burk*, (1950) 228 Ind. 162, 89 N.E.2d 905. This case reviews the law of intervening cause, and demonstrates that most authorities use similar language. The State's objection is that "plaintiff's instruction misstates the law by failing to show an intervening cause." One of the State's defenses was that the negligent operation of the truck was the causative factor and intervened

between defendant's slick road and the wreck. Thus, the instruction was applicable and was adequate, subject to the criticism of being an abstract statement of the law, as mentioned regarding instruction No. 2.

Plaintiff's instruction No. 7 provided as follows:

"One placed in a position of danger by the negligent act of another, which position requires immediate and rapid action, without time to deliberate as to the better cause to pursue, is not held to the strict accountability required of one situated under more favorable circumstances, since contributory negligence is not necessarily chargeable to one on his failure to exercise the greatest prudence or best judgment in such a case. All that is required of a person suddenly placed in peril is that he act only with the degree of care that an ordinarily prudent person would exercise under like circumstances."

The State challenges the correctness of this instruction because it omits the necessary elements that (1) the situation of peril was not of the plaintiff's own creation and (2) the apprehension of danger must have been reasonable. The State further objects that the instruction is not supported by the evidence.

■ In the first objection, the State draws a distinction between the phrase "... one placed in a position of danger by the *negligent* act of another ...," as used in the plaintiff's instruction No. 7, and a phrase used in some sudden emergency instructions "... *placed in a position of danger not created by his own fault* ...." The State cites *Cartwright v. Harris,* (1980) Ind.App., 400 N.E.2d 1192, in support of its argument. In *Cartwright, supra,* the court affirmed the action of the trial court in refusing to give an instruction containing the phrase "... position of danger by the negligent act of defendant ..." for the reason that it failed to include an essential element, that is, that Cartwright "did not create the position of danger by his own negligence...." We find, however, in examining the cases, that this holding is not universal. In *Stansberry v. Clabbers,* (1975)

164 Ind.App. 594, 330 N.E.2d 123, the court approved as a proper statement of the law the phrase "... due to the negligence of others ...." In the same opinion the court approved, as being a proper statement of the law, the phrase contained in another instruction, tendered but refused because the subject was already covered, "... not created by his own fault...." *Hedgecock v. Orlosky,* (1942) 220 Ind. 390, 44 N.E.2d 93, used the phrase "... caused by the negligence of defendant ...." We concede that "... *not created by his own fault* ..." is a slightly stronger phrase, thus stating the elimination of any possible negligence on the part of the plaintiff, and is preferable. However, we do not agree that the use of the phrase "... the negligent act of another ..." is reversible error. The difference is slight and, in our opinion, not prejudicial. Both phrases draw the juror's attention to the proposition that sudden emergency is not available to a plaintiff who is initially at fault.

■ The State's second objection to the plaintiff's instruction No. 7 is that it omits the element that the apprehension of danger must have been reasonable. *Stansberry, supra,* quotes *Bundy v. Ambulance Indianapolis Dispatch, Inc.,* (1973) 158 Ind.App. 99, 301 N.E.2d 791, 792, as authority declaring the necessary elements of the sudden emergency doctrine:

"'(1) That the appearance of danger of peril was so imminent that he had no time for deliberation;

(2) That the situation relied upon to excuse any failure to exercise legal care was not created by his ... own negligence;

(3) That his conduct under the circumstances was such as the law requires of an ordinarily prudent man under like or similar circumstances.'"

330 N.E.2d at 125. *Cartwright, supra,* lists those same elements. However, *Lovely v. Keele,* (1975) 166 Ind.App. 106, 333 N.E.2d 866, 868, mentions a fourth requisite, that is, "[A]n apprehension of an emergency must, itself, have been reasonable." *Hedgecock, supra.* In *Hedgecock, supra,* the court, quoting authority from other juris-

dictions, made that statement, but it was dicta as the issue was not being decided. We are of the opinion that this supposed fourth element upon which the State relies is not a separate element at all but is a part of, and is necessarily included in element (3) of the requisites recited in *Stansberry, supra, Bundy, supra,* and *Cartwright, supra.* Element (3) requires the conduct of the plaintiff to conform to that of a reasonable, prudent man under all of the circumstances, which would include a reasonable apprehension of danger.

Finally, the State challenges the giving of plaintiff's instruction No. 7 because it was not supported by the evidence. The giving of a sudden emergency instruction, even where not supported by the evidence, is harmless error unless a party can show prejudice thereby. *Lovely, supra; Spears v. Aylor,* (1974) 162 Ind.App. 340, 319 N.E.2d 639. The rationale stated in those cases for the rule is that the instruction is only an amplification of the definition of negligence, and there is a certain redundancy contained in such an instruction. No prejudice has been shown by the State.

We are of the opinion that the court did not err in giving instruction No. 7.

Plaintiff's instruction No. 10, applicable only to Totty, advised the jury, among other things, that it could consider (1) disability of bodily function and (2) loss of earning capacity in assessing damages. The State's objection was that there was no evidence to support those elements of damage. No issue is presented of the correctness of the instruction. Generally, the giving of an instruction upon which there is no evidence is reversible error. *Lamb v. York,* (1969) 252 Ind. 252, 247 N.E.2d 197. The evidence tending to support the instruction was presented by Totty and his physician, Dr. Robert Lawrence. Totty was a seventh grade dropout from school and was an assistant driver for T.I.M.E. earning $13,000 to $15,000 annually. He was rendered unconscious by the wreck, having sustained head injuries. He now suffers dizzy spells, headaches, and problems with his neck, spine, and lower back. He was off work for three months, returned, and was then off work for ten months. At the conclusion he did not return to T.I.M.E. because he could not keep up with the schedule. He could not sit or lift properly, and could drive only four hours at a time without rest. Dr. Lawrence testified that Totty's condition was permanent and that he would probably always have problems. He will require pain medication the rest of his life. Totty bought his own truck and hauled produce, but because of his back he was unable to load and unload, causing him extra expense. Because of his condition it took him 25 per cent to 33 per cent more time to make the runs, thus cutting down on earning capacity.

The gist of the concept of impairment of earning capacity is the adverse effect on vocation. *Scott v. Narbours,* (1973) 156 Ind.App. 317, 296 N.E.2d 438. The basic measure of damages for impairment of lost earning capacity is the difference between the amount which the plaintiff was capable of earning before the injury and the amount which he was capable of earning thereafter. *Scott, supra.*

We are of the opinion that the facts above recited were sufficient to justify the jury being instructed on the consideration of disability of bodily functions and lost earning capacity.

### Issue VI. Sufficiency of the evidence

The State challenges the sufficiency of the evidence in two regards: (1) there was no evidence that the road was slick and (2) there was no evidence of notice or knowledge of defects on the part of the State.

Whether the defendant's conduct caused the plaintiff's injury is a question of fact. In determining whether there was sufficient evidence to support the jury's verdict this court neither weighs the evidence nor judges the credibility of the witnesses; rather, we examine the evidence and the logical inferences therefrom supportive of the verdict to determine whether there was sufficient evidence on each ele-

ment of the plaintiff's case. *State v. Thompson*, (1979) Ind.App., 385 N.E.2d 198.

The State has a general duty to exercise reasonable care in the design, construction, and maintenance of its highways for the safety of the public. *State v. Thompson, supra; Indiana State Highway Commission v. Clark*, (1978) Ind.App., 371 N.E.2d 1323; *Elliott v. State*, (1976) 168 Ind.App. 210, 342 N.E.2d 674. The person charged with negligence must have actual or constructive knowledge of the danger or peril before liability can be imposed. *Hunsberger, supra; City of Indianapolis v. Bates*, (1976) 168 Ind.App. 555, 343 N.E.2d 819.

As recited in the statement of facts, local citizens testified as to the dangerously slick condition of the highway prior to the wreck and as to the highway's slick condition at the scene and time of the wreck. The prior condition was communicated to employees of the Indiana State Highway Department by at least two citizens. In addition, the Department conducted its own tests prior to the wreck which reflected an undue slickness. We are of the opinion there was sufficient evidence to support the verdict.

For the reasons stated, the judgments in favor of Graf and Jenkins are reversed and the trial court is ordered to enter judgments for the State of Indiana. The judgment in favor of Donald D. Totty is affirmed.

Reversed in part; affirmed in part.

ROBERTSON and RATLIFF, JJ., concur.