SPORTS, INC., Defendant-Appellant,

v.

George M. GILBERT, et al.,
Plaintiffs-Appellees.

No. 1–1080A284.

Court of Appeals of Indiana,
First District.

Feb. 23, 1982.

Rehearing Denied April 1, 1982.

James R. Fisher, Joseph A. Schenk, Ice, Miller, Donadio & Ryan, Indianapolis, for appellant.

Donald R. Forrest, New Albany, for appellees.

NEAL, Judge.

### STATEMENT OF THE CASE

The defendant-appellant, Sports, Inc. (Sports) appeals from an unfavorable judgment in a personal injury suit in the Clark Circuit Court. Jean and George Gilbert sued for the wrongful death of two of their children, and George, Karen, Lori and Brian Gilbert (the Gilberts) sued for their personal injuries. Judgment was entered on a jury verdict awarding $482,500 plus interest and costs to the Gilberts. Sports contends it did not owe a duty to the Gilberts.

We reverse.

### STATEMENT OF THE FACTS

Sports owns and operates an automobile racetrack known as the "Sportsdome Speedway" (speedway). It employs a security force consisting of off-duty police officers and special deputies who control traffic and crowds on the premises. There is a parking lot outside the speedway, and the racetrack area itself is surrounded by a fence. Beer

is sold within the fenced area, and only paying customers are allowed inside.

On August 9, 1975, shortly before 10:00 p. m., Thomas Riggs (Riggs) drove his pickup into the parking lot and had a minor collision with a car. Security guards were summoned to the scene where they found the driver of the car sitting inside his vehicle and Riggs hiding in a nearby weeded lot. The security guards determined that Riggs was intoxicated. However, he was peaceful and cooperative, and they did not arrest him. Neither party contends that Riggs became intoxicated at the speedway or was even admitted inside the gate. The guards questioned Riggs about the accident and with his permission searched the pickup. They found an unloaded shotgun behind the seat, but they found no alcoholic beverages in the truck or in Riggs' possession. The driver of the car did not press charges.

The security guards learned that Riggs had come to the speedway to see his brother race. The security guards testified that two of his relatives, one male and one female, were located, and these relatives drove Riggs away from the speedway in his own pickup. Shortly after the pickup left the parking lot, it collided with the family automobile of the Gilberts. Riggs was driving and only the female relative was in the pickup with him. Riggs ran a red light at a Clarksville intersection approximately two miles from the speedway and was intoxicated at the time of the collision. The record does not disclose how Riggs resumed the wheel of his truck. Riggs was not a party to this action, and he and his relatives were not called to testify for either side.

## ISSUES

The primary issue presented by Sports is whether a private citizen owes a duty to the motoring public to detain an intoxicated motorist who enters his premises, when the citizen has not served any alcohol to the motorist and knows the motorist will drive away from the premises while intoxicated. Sports raises additional issues regarding the extent of the duty, proximate cause, and a jury instruction. However, our disposition of this case does not require any discussion of these issues.[1]

## DISCUSSION AND DECISION

The existence of a duty is a question of law. *Neal v. Home Builders, Inc.*, (1953) 232 Ind. 160, 111 N.E.2d 280; *Walters v. Kellam & Foley*, (1977) 172 Ind.App. 207, 360 N.E.2d 199. The Gilberts' argument for the existence of a duty can be summarized as follows: Sports' employees knew that Riggs was intoxicated and that he already had caused one collision in their parking lot. As deputies they had the power to arrest him and take him into custody. The possibility that Riggs could cause a serious collision was reasonably foreseeable. Since they had already arrested or at least taken charge of him, they had a duty to protect those using the highways by preventing Riggs from driving. Sports had a policy against arresting persons on the premises who were not causing a serious disturbance. Its employees followed this policy and violated their duty to the plaintiff by either (1) letting Riggs drive his pickup or (2) leaving him in the care of a person or persons who it reasonably should have known would not prevent him from driving. Because only the female relative was in the pickup with Riggs at the time of the collision, the Gilberts doubt the existence of the male relative. They imply that a woman could not have been expected to prevent Riggs from driving. Alternatively, they assert that since the male relative was to be involved in a race later that evening, he must have abandoned Riggs once they were out of sight of the security guards and returned

1. In oral argument the Gilberts contended that Sports waived the "duty" issue when it submitted a jury instruction which appeared favorable to the Gilberts' theory of the case. This argument was not raised in the Gilberts' brief, and we need not consider it. However, we note that the argument would fail because Sports' two motions for judgment on the evidence, both of which the trial court denied, were sufficient to raise the issue. The subsequent submission of the jury instruction did not waive the previous error. *See State v. Totty*, (1981) Ind.App., 423 N.E.2d 637.

unnoticed to the speedway. The Gilberts argue that this result was reasonably foreseeable and that Sports had a duty to prevent it.

In support of their "duty" argument, the Gilberts cite *Vandalia Railway Company v. Duling*, (1915) 60 Ind.App. 332, 109 N.E. 70; *Snyder v. Mouser*, (1971) 149 Ind.App. 334, 272 N.E.2d 627; the Restatement (Second) of Torts §§ 319, 324, and 390 (1965); Annot., 19 A.L.R.3d 1175 (1968). *Vandalia* concerns a railroad's liability for injuries to animals who wander onto its tracks. *Snyder* deals with a Welfare caseworker's failure to warn a child's foster parents that the child had homicidal tendencies. Both cases state that, "[d]uties, the violation of which may constitute negligence, arise by operation of the common law and in the absence of any statute, out of knowledge of situations." *Snyder, supra* 149 Ind.App. at 346, 272 N.E.2d 627; *see Vandalia, supra* 60 Ind.App. at 344, 109 N.E. 70. The situations described in those cases obviously differ from the situation in this case in that neither involved liability for the negligence of a third party.

The Restatement (Second) of Torts § 319 (1965) states:

> "Duty of Those in Charge of Person Having Dangerous Propensities
>
> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

The Comment and illustrations following this section address only situations in which a dangerous person is in the custody of someone else, as when a person is hospital-ized due to a contagious disease or a mental illness manifested by violence. Cases that cite this section all deal with similar custodial situations. *See e.g.: Estate of Mathes v. Ireland*, (1981) Ind.App., 419 N.E.2d 782 (wrongful death action arising from the killing of the claimant's wife by a 20-year-old mentally-ill man who was living with his mother and grandmother and had been treated by two psychiatric facilities—the parents, grandparents and two psychiatric facilities were named as defendants);[2] *Maroon v. State Department of Mental Health*, (1980) Ind.App., 411 N.E.2d 404 (wrongful death action arising from the killing of an Illinois woman by a criminal sexual deviant who had escaped from an Indiana State Hospital—Illinois law applied); *Semler v. Psychiatric Institute of Washington, D.C.*, (4th Cir. 1976) 538 F.2d 121, 125 (suit against psychiatric institute—a mental patient transferred to outpatient status without court approval killed the plaintiff's daughter); *Christensen v. Epley*, (1978) 36 Or.App. 535, 585 P.2d 416 (estate of decedent sues youth center for negligence in failing to prevent the escape of youths with violent propensities); *Sego v. Mains*, (1978) 41 Colo.App. 1, 578 P.2d 1069, (plaintiff sues court-appointed custodian of mentally-ill person for injuries inflicted by mentally-ill person). It appears that this section was not intended to apply under the circumstances in the case at bar.

The Gilberts also refer us to the Restatement (Second) of Torts § 324A (1965):

> "Liability to Third Person for Negligent Performance of Undertaking
>
> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his

---

2. The Gilberts cite *Mathes* as additional authority for a duty to control Riggs. This case and the other cases relying on Restatement (Second) of Torts § 319 are distinguishable from the one before us in that the relationships were continuing, well-established, and, in all but the *Mathes* case, imposed by court order. The relationship between Riggs and Sports was brief and accidental. The *Mathes* court, while reversing in part the trial court's dismissal of the case, stated that the appellant was "grasp-ing at the finest of threads to produce an acceptable legal ground for liability, and it is only under the most unusual set of circumstances that any of his arguments may prove successful." *Id.* at 784. The court did not elaborate on the possible extent of the defendants' right and duty to control the decedent's killer. However, such rights would appear to be very limited since Pierce had never been adjudicated mentally ill. *See Id.* (dissenting opinion) pp. 786–789.

things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

However, the record does not show that Sports' actions increased the risk of harm, and there is no evidence that the Gilberts relied on Sports' undertaking or that Sports undertook a duty owed by Riggs.

The Restatement (Second) of Torts § 390 (1965), on which the Gilberts also rely, states:

"Chattel for Use by Person Known to be Incompetent

One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them."

This principle is frequently applied when an automobile is entrusted to an intoxicated person. See Annot., 19 A.L.R.3d 1175 (1968). Indiana follows a strict version of this rule, requiring that the actor have actual knowledge that the driver is intoxicated at the time he entrusts the car to him. *Fisher v. Fletcher*, (1922) 191 Ind. 529, 133 N.E. 834; *Ellsworth v. Ludwig*, (1967) 140 Ind.App. 437, 223 N.E.2d 764. However, this rule only applies to those who own or have the right to control the automobile or chattel in question. *See Fisher, supra, Ellsworth, supra*; Restatement (Second) of Torts § 390 (1965) Comments. Sports is a private entity. It did not own Riggs' truck and had no right to control it. Sports cannot be considered a supplier or owner for purposes of the above rule. *See Hulse v. Driver*, (1974) 11 Wash.App. 509, 524 P.2d 255. In short, neither this rule, nor any of the other authorities cited by the Gilberts, supports their argument that Sports had a duty to control Riggs.

The majority of jurisdictions follow a general rule regarding the duty to control the conduct of a third person. The Restatement (Second) of Torts § 315 (1965) states this rule as follows:

"There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection."

There are several kinds of cases exemplifying the kind of relationship referred to in § 315, and in all of them the third person is in some way incompetent or the injured plaintiff is entitled to special protection due to his relationship with the actor.

As related above, some jurisdictions have held that hospitals and detention centers may be responsible for injuries inflicted by patients or inmates who are known to be violent. *See Semler, supra; Grimm v. Board of Pardons and Paroles*, (1977) 115 Ariz. 260, 564 P.2d 1227; *Ajirogi v. State*, (1978) 59 Haw. 515, 583 P.2d 980. *See also Sego, supra*. In these cases the defendant had a legal right and duty to control the third person by preventing his release or escape. Parents have a similar duty to control their minor children when they are aware of the necessity for such control and of their ability to exercise it. *See Stewart v. Swartz*, (1914) 57 Ind.App. 249, 106 N.E. 719; Restatement (Second) of Torts § 316 (1965).

It has also been decided that an owner of land has a duty to protect business invitees from the acts of third persons on the premises when the danger to the invitee is foreseeable. *See Ambrose v. Kent Island Yacht*

Club, Inc., (1974) 22 Md.App. 133, 321 A.2d 805; *Shockley v. Zayre of Atlanta, Inc.,* (1968) 118 Ga.App. 672, 165 S.E.2d 179. Under this theory it would have been the speedway patrons who were entitled to protection, and the protection would have extended only to dangers from persons and conditions on the premises. *See Downham v. Wagner,* (1980) Ind.App., 408 N.E.2d 606; *Mullins v. Easton,* (1978) Ind.App., 376 N.E.2d 1178.

Indiana imposes civil liability against anyone who supplies alcoholic beverages to a minor or an intoxicated adult who causes personal injuries while driving under the influence. *Elder v. Fisher,* (1966) 247 Ind. 598, 217 N.E.2d 847; *Parrett v. Lebamoff,* (1980) Ind.App., 408 N.E.2d 1344; *Brattain v. Herron,* (1974) 159 Ind.App. 663, 309 N.E.2d 150. In these cases, liability stems from a duty imposed by statute. *See* Ind. Code 7.1–5–7–8 and 7.1–5–10–15 (Supp. 1981). However, Riggs did not consume alcohol at the speedway.

In Indiana and elsewhere the courts have shown great reluctance to require an individual to take any action to control a third party when there is no special relationship between them. When a special relationship does exist, the responsibilities it engenders are limited.

At least four courts have not imposed any duty on the passenger of a drunk driver to exercise any control over the other's driving where the driver owned the car. See *Fugate v. Galvin,* (1980) 84 Ill.App.3d 573, 40 Ill.Dec. 318, 406 N.E.2d 19; *Cecil v. Hardin,* (1978) Tenn., 575 S.W.2d 268; *Hulse v. Driver,* (1974) 11 Wash.App. 509, 524 P.2d 255; *Sloan v. Flack,* (1963) La.App., 150 So.2d 646. The rule applies even though a mere word from the passenger would enable the driver to avoid danger. *Fugate, supra; Cecil, supra; Sloan, supra.* However, if the passengers had been involved in a joint enterprise, which entails a joint right to control the vehicle, a corresponding joint duty would be imposed. *See Indiana State Highway Commission v. Rickert,* (1980) Ind.App., 412 N.E.2d 269, *reversed on other grounds* Ind., 425 N.E.2d 620; *State*

*of Indiana, State Highway Commission v. Speidel,* (1979) Ind.App., 392 N.E.2d 1172; *Fugate, supra; Cecil, supra.*

In *Shockley v. Zayre of Atlanta, Inc.,* (1968) 118 Ga.App. 672, 165 S.E.2d 179, Zayre's duty to protect its business invitees did not extend to a situation in which a third party attacked an invitee out of personal animosity. This was so despite the well-recognized right to use force in defense of another. *See* Ind.Code 35–41–3–2(a) (Supp.1981).

In *Ambrose v. Kent Island Yacht Club, Inc.,* (1974) 22 Md.App. 133, 321 A.2d 805, the plaintiff's daughter was injured during a game of catch at a yacht club picnic. The court held that the yacht club security guards were not negligent in failing to anticipate the negligence of the ball players. It is axiomatic that an owner or occupier of land is not an insurer of the safety of invitees. *See Hammond v. Allegretti,* (1974) 262 Ind. 82, 311 N.E.2d 821; *Letson v. Lowmaster,* (1976) 168 Ind.App. 159, 341 N.E.2d 785.

In all of the cases imposing liability for the failure to control the conduct of a third party, there are similar factors supporting the imposition of a duty. There is a person in need of special supervision or protection (i.e., child, drunkard, business invitee) from someone who is in a superior position to provide it (parent, supplier of alcohol, business owner, hospital). This dependency is part of the special relationship described by the Restatement (Second) of Torts § 315 (1965). The other part of this special relationship is the right to intervene or control the actions of a third person. We know of no case from any jurisdiction which imposes a duty to control a third person when no right to control exists. The right to control another person's actions is essential to the imposition of this duty. If Sports had no right to control Riggs, its conduct cannot constitute negligence.

Sports argues that it had no right to detain or control Riggs because such control would constitute an arrest. A private entity may only arrest someone if a felony has in fact been committed, and

there are reasonable grounds to suspect the individual it arrests. *Smith v. State,* (1972) 258 Ind. 594, 283 N.E.2d 365, 367; *Golibart v. Sullivan,* (1903) 30 Ind.App. 428, 66 N.E. 188. When a private citizen makes an arrest he does so at his own peril. *Knotts v. State,* (1963) 243 Ind. 501, 187 N.E.2d 571; *Golibart, supra.* The use of force in a "citizen's arrest" is governed by statute:

"A person other than a law enforcement officer is justified in using reasonable force against another person to effect his arrest or prevent his escape if:

(1) a felony has been committed; and

(2) there is probable cause to believe the other person committed that felony.

However such person is not justified in using deadly force unless that force is justified under section 2 of this chapter."

Ind.Code 35–41–3–3(a) (Supp.1981). Public intoxication is a Class B misdemeanor. Ind. Code 7.1–5–1–3 (Supp.1981). The classification of "driving while intoxicated" varies:

"A person who operates a vehicle while intoxicated commits a Class A misdemeanor. However, the offense is a Class C felony if it results in the death of another person and is a Class D felony if:

(1) the person is also charged in the indictment or information with having a previous conviction under this section, if that previous conviction occurred after June 30, 1978; or (2) the offense results in serious bodily injury (as defined by IC 35–41–1–2), other than death, to another person."

Ind.Code 9–4–1–54(b) (Supp.1981). Clearly, when Riggs was in the speedway parking lot he could only have been arrested for a misdemeanor. A private citizen making such an arrest would be liable for false imprisonment. *Knott, supra; Golibart, supra.* Therefore, there was no duty to make a "citizen's arrest."

Nevertheless, the Gilberts emphasize that all of Sports' security guards were deputies or police officers; hence, they could arrest Riggs without incurring liability for false imprisonment. This argument fails for two reasons.

First, this court recently concluded that "it is the nature of the acts performed and not whether the officer is on or off duty, in or out of uniform, which determines whether the officer is engaged in the performance of his official duties." *Tapp v. State,* (1980) Ind.App., 406 N.E.2d 296 at 302. *See also, Dickson v. Waldron,* (1893) 135 Ind. 507, 34 N.E. 506; *Hogle v. Reliance Manufacturing Company,* (1943) 113 Ind.App. 488, 48 N.E.2d 75 (torts of officer acting in unofficial capacity create private employer liability). When an officer makes an arrest, he is using power conferred by the state, not by his private employer. A private employer has no right to interfere with this power. The employer does not "rent" the state's police power when it employs an off-duty officer. Therefore, whether Sports had a strict or lenient policy regarding intoxicated persons on its premises, this policy could not rightfully control the arrest powers that its security guards derived from the state.

Second, the decision to enforce or not to enforce a law is discretionary, and neither a police officer nor a governmental unit is civilly liable for it. Ind.Code 34–4–16.5–3; *see* Ind.Code 16–13–6.1–32. The duty owed by the government in such instances is a duty to the general public, one which does not give rise to individual causes of action. *Crouch v. Hall,* (1980) Ind.App., 406 N.E.2d 303; *Massengill v. Yuma County,* (1969) 104 Ariz. 518, 456 P.2d 376. If the Sports employees are immune from liability for their failure to use powers granted to them by the state, their private employer is likewise immune.

We conclude that the official inaction of the Sports security guards cannot be imputed to their private employer; Sports had no right to act and no right to direct its employees in the use of their arrest powers. There is no doubt that the Gilberts have suffered a tragic loss. Mr. Riggs' conduct deserves condemnation. However, the duty the Gilberts would impose on Sports lacks legal support, and would be burdensome and potentially dangerous to the public. We hold that Sports had no duty to detain Riggs when it discovered him intoxicated on

its property. We reverse the judgment of the trial court, and remand this cause with directions to enter judgment for Sports, Inc.

Reversed and remanded.

RATLIFF, P.J., and ROBERTSON, J., concur.